IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | No. 08 CV 3697 |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS NATIONAL RIFLE ASSOCIATION, *ET AL.* MOTION FOR ATTORNEY'S FEES**

**Introduction**

The Court of Appeals remanded these cases "for awards of reasonable attorneys' fees under [42 U.S.C.] §1988." *National Rifle Ass'n v. Chicago*, 646 F.3d 992, 994 (7th Cir. 2011). The NRA plaintiffs are prevailing parties who achieved complete success on the merits: "After the Supreme Court held that the second amendment applies to the municipalities' ordinances, . . . plaintiffs had in hand a judgment of the Supreme Court that gave them everything they needed." *Id.*

"In calculating reasonable attorneys' fees, the district court should first determine the lodestar amount by multiplying the reasonable number of hours worked by the market rate." *Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 659-60 (7th Cir. 2007) (citation omitted). The following sets forth the reasonable number of hours and reasonable fee rates for the case. The positions taken by the parties are set forth in the attached Joint Statement Pursuant to Local Rule 54.3(e) (hereafter "Jt. State.").

1

For work on both *NRA v. Chicago* and *NRA v. Oak Park*, plaintiffs claim a total of $1,727,160.71 in fees and expenses, for which defendants Chicago and Oak Park are jointly and severally liable. For work only involving *NRA v. Chicago*, plaintiffs claim an additional $142,109.60. For work only involving *NRA v. Oak Park*, plaintiffs claim an additional $326,052.98. Jt. State., 2. This motion is subject to a supplemental filing containing additional attorney's fees and expenses incurred in litigating this motion.

## I. THE REASONABLE NUMBER OF HOURS

Plaintiffs achieved complete success, and "[t]hat 'result is what matters,': A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" *Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) (citation omitted). Once the fee applicant has submitted documentation, the goal "is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*. at 2216.

The amount of time expended by counsel in this case is eminently reasonable in light of the case history.[1] The NRA plaintiffs challenged the Chicago and Oak Park handgun bans under the Second and Fourteenth Amendments. The District Court held that the Second Amendment does not apply to the states and dismissed the complaint. The Court of Appeals consolidated the NRA cases with the McDonald case and affirmed.

---

[1] See *National Rifle Ass'n v. Village of Oak Park*, 617 F. Supp.2d 752 (N.D. Ill. 2008), *aff'd sub nom.*, *NRA v. City of Chicago*, 567 F.3d 856 (7th Cir. 2009), *cert. granted sub nom.*, *McDonald v. City of Chicago*, 130 S. Ct. 48 (2009), *rev'd*, *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), *cert. granted & remanded*, *NRA v. Chicago*, 130 S.Ct. 3544 (2010). On remand, *NRA v. Chicago*, 393 F. App'x 390 (7th Cir. Aug. 25, 2010), *on further remand*, *NRA v. Village of Oak Park*, 755 F. Supp.2d 982 (N.D. Ill. 2010) (denying attorney's fees), *rev'd*, *NRA v. Chicago*, 646 F.3d 992, 993 (7th Cir. 2011) (remanding for fee award).

The NRA filed a petition for a writ of certiorari,[2] as did McDonald. The Supreme Court initially granted the McDonald petition. The NRA litigants remained parties under Supreme Court Rule 12.6, and filed opening and reply briefs.[3] The Court granted NRA's motion to participate in oral argument, which was conducted on behalf of NRA by Paul D. Clement, former U.S. Solicitor General.[4] After rendering the *McDonald* decision, the Court granted NRA's petition for a writ of certiorari and remanded the case.[5] Since then, fee proceedings have taken place in this Court and the Court of Appeals.

In this Court and the Court of Appeals, lead counsel has been Stephen P. Halbrook, a Second Amendment expert from Fairfax, Virginia. Local counsel in *NRA v. Chicago* has been Stephen A. Kolodziej of Brenner, Ford, Monroe & Scott, Ltd., Chicago. Local counsel in *NRA v. Oak Park* has been William N. Howard of Freeborn & Peters LLP, Chicago. Halbrook prepared the petition for a writ of certiorari. Halbrook Dec. 2-3.[6]

---

[2] See NRA's Petition for a Writ of Certiorari, 2009 WL 1556563 (Jun. 3, 2009); Reply to Brief in Opposition, 2009 WL 2491800 (Aug. 14, 2009). Pursuant to this Court's directive, paper copies of all unpublished opinions cited to Westlaw herein are being provided to chambers. Paper copies of items cited to Westlaw that are not opinions will be submitted on request.

[3] Brief for Respondents NRA, *et al.* in Support of Petitioners, 2009 WL 3844394 (Nov. 16, 2009); Reply Brief for Respondents NRA, 2010 WL 581625 (Jan. 29, 2010).

[4] *McDonald v. Chicago*, 130 S. Ct. 1317 (2010) (*mem.*) (granting motion); 2010 WL 710088, *17-28 (argument by Clement) (Mar. 2, 2010). Audio: http://www.oyez.org/sites/default/fi...2-argument.mp3.

[5] *NRA v. Chicago*, 130 S. Ct. 3544 (2010).

[6] A name followed by "Dec." refers to the declarations of counsel filed herewith.

In the Supreme Court, the NRA's opening brief on the merits was prepared by Halbrook[7] together with Stephen D. Poss and other counsel (including former Supreme Court clerks Kevin Martin and Joshua Lipshutz) from Goodwin Procter, Boston.[8] Also assisting in the drafting of the brief was Charles Cooper, an experienced Supreme Court litigator and former Assistant Attorney General for the Office of Legal Counsel, and other counsel from Cooper & Kirk, Washington, D.C. Halbrook Dec. 3. The NRA's reply brief was prepared by the same counsel together with Paul D. Clement, King & Spalding (now of Bancroft PLLC), Washington, D.C. Clement conducted the oral argument for NRA.[9] Halbrook Dec. 4-5.

"Use of one or more lawyers is a common practice, primarily because it often results in a more efficient distribution of work. . . . It allows more experienced, accomplished, and expensive attorneys to handle more complicated matters . . . ." *Gautreaux*, 491 F.3d at 661. Nowhere is this trend more pronounced than in Supreme Court litigation.

The case was extraordinarily complex. It involved the original understanding of the Fourteenth Amendment, nineteenth-century precedents holding that the Second Amendment is not incorporated under the Privileges-or-Immunities Clause, and twentieth-century jurisprudence on incorporation of Bill of Rights freedoms through the Due Process Clause. In the Supreme Court, besides the briefs of parties, 50 *amici curiae* briefs were filed, 32 on behalf of petitioners, 16 for respondents, and 2 styled as in support of neither party. Halbrook Dec. 4.

---

[7] Halbrook had authored the *Amici Curiae* Brief for 55 Senators & 250 Representatives in *District of Columbia v. Heller,* 554 U.S. 570 (2008), which held that the Second Amendment guaranteed an individual right to keep and bear arms. See 2008 WL 383530 (*amici* brief).

[8] Goodwin Procter had authored the NRA Amici Brief in *Heller*. See 2008 WL 354081.

[9] Before representing the NRA, in *McDonald* Clement filed the *Amici Curiae* Brief for 55 Senators & 250 Representatives, 2009 WL 4099522.

*Roe v. Saenz,* 526 U.S. 489 (1999), invalidated a state law under the Fourteenth Amendment, and the resultant fee petition was decided in *Roe v. Saenz*, No. CIV-S-97-0529DFL JFM, 2000 WL 33128689 (E.D. Cal. Nov. 20, 2000). "The lion's share of the hours claimed relate to the Supreme Court phase of the litigation." *Id*. at *2. The court rejected the argument that excessive time was devoted to the briefs and preparation for oral argument, noting that "almost any Supreme Court litigation is inherently complex and time-consuming, and . . . the issues presented in this case were of considerable importance, breadth, and difficulty . . . ." *Id*. at *2. "Given that this case centered almost exclusively on complex constitutional questions, and that the majority of the hours billed by Roe's attorneys were for litigation at the Supreme Court level, it was appropriate to heavily staff the case with senior litigators." *Id*. at *3.[10]

Plaintiffs' counsel have detailed their time expended per firm and per attorney within each firm. Jt. State. 2-4; see declarations of Halbrook, Clement, Martin, Thompson, Howard, and Kolodziej, all attaching time sheets showing services rendered. Defendants do not challenge time entries except as indicated below.

First, defendants argue that the time devoted to these cases should not result in recovery exceeding $399,950, the amount paid in a settlement by Chicago to plaintiffs' counsel in McDonald, because "the instant cases were no more than 'tag-along' pieces of clone litigation to *McDonald*." Jt. State. 5. However, the Court rejected McDonald's primary argument based on the Privileges-or-Immunities Clause, and agreed with the NRA's argument based on the Due Process Clause. See Part III below. Also, the basis of the settlement is speculative. See Jt.

---

[10] The court approved as reasonable 815.75 hours of work by lead counsel and between 109 and 220 hours each for seven other attorneys. *Id*. at *4.

State. 7. McDonald lead counsel was the same counsel in the *Heller* case, in which he sought fee recovery for 3,270.2 hours. Jt. State., 7 n.1.

Next, defendants object to specific blocks of time expended by specific counsel. First, they argue that the question of liability for attorney's fees was not complex and that it was unnecessary for Paul Clement to work on that phase of the litigation. Jt. State. 8. However, not only was Mr. Clement required to prepare a declaration justifying all of his fees, the issue was sufficiently complex under *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598 (2001), that this Court ruled that plaintiffs were not prevailing parties. Clement had argued *Perdue v. Kenny A.,* 130 S. Ct. 1662 (2010), a leading precedent on fees, and thus had unique insights on fee issues. Clement's participation in the fee litigation was relatively limited and entirely proper.

Defendants object that Halbrook's time expended exceeded that of McDonald counsel Alan Gura, who "successfully litigate[d] the case on behalf of the *McDonald* plaintiffs . . . ." Jt. State. 10. However, the Supreme Court rejected McDonald's approach and agreed with that of the NRA, on whose team Halbrook played a crucial role. See Part III below; Halbrook Dec. 3-5. Defendants fail to point to any specific hours in Halbrook's time sheets as not justified.

Defendants object to the NRA's filing of a petition for certiorari as unnecessary because the Supreme Court later ruled on the merits in *McDonald*. Jt. State. 11. It would have been irresponsible for NRA not to have filed the petition, and it would have been speculative to surmise that the McDonald litigants would file their own petition, much less that the Court would grant it. The granting of the McDonald petition kept the NRA litigants in the case as party Respondents in Support of Petitioners with full briefing rights. Supreme Court Rule 12.6.

6

Defendants object to *any* work by Halbrook in the Supreme Court because the NRA also retained two other firms to represent it in that phase. Jt. State. 11. Yet NRA had every reason to keep Halbrook on the team not only for continuity, but also given his preeminent scholarship[11] and litigation experience[12] on the Second and Fourteenth Amendments and his Supreme Court experience.[13] Halbrook contributed significant portions of NRA's opening and reply briefs. Halbrook Dec., 3-4.

Defendants object to incidental tasks that could arise in any litigation, including an opposition to reassignment and an unfiled opposition to consolidation. Jt. State. 11-12. NRA's motion to strike the jury demand was necessitated by defendants' own making of that demand. The motion for rehearing *en banc* prior to the panel hearing in the Court of Appeals was made to expedite the case had the full court wished to reconsider the Seventh Circuit's 1982 decision in *Quilici*, 695 F.2d 261, which had held against incorporation. See Jt. State. 11-12. The denial of that motion cleared the path to quicker Supreme Court review once the panel decision was handed down.

Defendants object to "duplicative" work being done by the two firms acting as local counsel. Jt. State. 13-14. Stephen Kolodziej of the Brenner firm acted as local counsel against Chicago, and William Howard of the Freeborn firm acted as local counsel against Oak Park.

---

[11] Halbrook's book *Freedmen, the Fourteenth Amendment, & the Right to Bear Arms* was cited as authority in *McDonald*, 130 S. Ct. at 3038, 3042-43, and *Heller*, 128 S. Ct. at 2810. His book *The Founders' Second Amendment* was cited as authority in *McDonald*, 130 S. Ct. at 3037, and *United States v. Skoien*, 614 F.3d 638, 640, 648-49 (7th Cir. 2010) (*en banc*).

[12] Halbrook participated as counsel in the leading incorporation cases preceding *McDonald*: *Quilici v. Village of Morton Grove*, 695 F.2d 261 (7th Cir. 1982) (*amicus*), *Fresno Rifle & Pistol Club, Inc. v. Van de Kamp*, 965 F.2d 723 (9th Cir. 1992) (lead counsel), and *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009) (*amicus*).

[13] Halbrook argued *Printz v. United States*, 521 U.S. 898 (1997), and other firearms law cases.

Where one firm did work, the other firm never charged for it, whether for pre- or post-consolidation work. The reasonableness of the work actually performed by each firm, and lack of duplication, is fully documented in their statements of services performed. See Kolodziej Dec. 2 & Howard Dec. 1-3 with attached time sheets; Halbrook Dec. 2-3, 5. Defendants point to nothing in the time sheets of local counsel that was not necessary and proper.

Finally, defendants object to any fees for Cooper & Kirk because it entered no appearance. Jt. State. 14. That was not required. The firm assisted with briefing and moot court in the court of appeals, revised the drafts of the petition for certiorari and reply brief, contributed to briefing in the Supreme Court and participated in moot court for argument therein, and prepared a fee declaration. Halbrook Dec. 3-4; Thompson Dec. 1-5 & Ex. A (invoices describing services).

In sum, the time expended by counsel in this case was eminently reasonable in light of the fact that it went all the way to the Supreme Court and resulted in a seminal precedent in an uncharted area of constitutional law.

## II. **CALCULATION OF REASONABLE HOURLY RATES**

The reasonable hourly rate is the market rate, which is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Gautreaux*, 491 F.3d at 659-60 (citation omitted).[14] "[O]nce an attorney provides evidence establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id*. (citation omitted).

---

[14] The relevant "community of practitioners" may pertain to an area of the law "where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market." *Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009).

While an attorney's actual billing rate for comparable work may be presumptively reasonable, an attorney may have no fee-paying clients or may work for reduced fees, in which case the court should consider "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work . . . ." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). "[A] particular attorney may have special skills or experience which raise the value of his time above the value of another attorney's time." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982).

"'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). A fee award under § 1988 should "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . . ." *Id*. at 393 (quoting Senate report). Thus, a fee award for a nonprofit legal service organization is calculated according to prevailing market rates, not cost. *Id*. at 889.[15]

Thus, the prevailing market rate may be recovered not just by for-profit firms, but also by "attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." *Save our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1524 (D.C. Cir. 1988) (*en banc*). As *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992), explained:

> Some lawyers dedicate their professional lives to causes they find admirable and worthy of support—to legal services for the poor, to the representation of unions. These lawyers are making contributions to their favored causes, not in money but in time. . . . Using opportunity cost as the measure of legal services means that the

---

[15] "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights." *Perdue,* 130 S. Ct. at 1676.

value of the lawyer's gift inures to the favored cause, and not to the adversary in litigation.[16]

The Supreme Court recently clarified its preference that full hourly rates be awarded instead of an enhancement to the fee. *Perdue*, 130 S. Ct. at 1672-73, teaches that a reasonable fee is one that will attract counsel to undertake meritorious civil rights cases, and that ideally "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." However, "an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation."[17] *Id*. at 1674. The enhancement issue may be avoided simply by making a fully adequate award to begin with.[18]

In this case, Paul Clement claims an hourly rate of $1020 for most of his work, that being the normal market rate he actually charged. Clement Dec. 4-5 & Ex. 2. A former U.S. Solicitor General, Clement has argued over 50 cases before the Supreme Court. *Id*. at 2. Steve Poss' normal market rate was $850 per hour. Martin Dec. 3. Based on "a usual hourly rate charged by an experienced Supreme Court practitioner," defendants argue that the rate for Clement and Poss should be $765 per hour. Jt. State., 8-9. Defendants do not challenge any of the other rates claimed by the attorneys in the respective firms of Clement and Poss.

---

[16] *See Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill.*, No. 00 C 7363, 2001 WL 893840, *4-6 (N.D. Ill. Aug. 7, 2001) (the reduced-fee rate in an attorney-client agreement is not a "reasonable" fee in a successful case with a public purpose).

[17] "This may occur if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors." *Id*.

[18] Instead of considering whether an elevated hourly rate is appropriate because the lawyers "achieve[d] the time savings [ ] implied by their higher rates," *Gusman v. Unisys Corp*., 986 F.2d 1146, 1151 (7th Cir.1993), *Perdue* suggests that the time savings should already be reflected in the rate.

The $765 hourly figure was derived from the fee motion in *Brown v. Entertainment Merchants Ass'n,* 131 S. Ct. 2729 (2011),[19] which applied long-standing precedents to hold that no special exception to the First Amendment existed to restrict sale of violent video games to non-adults. By contrast, this case involved overcoming what this Court and the Court of Appeals interpreted as settled precedent and persuading the Supreme Court to recognize a right that had not been selectively incorporated after more than a century of the selective incorporation doctrine. The rate in *Brown* fails to demonstrate why the actual market rates of Clement and Poss should be reduced. *See Gautreaux*, 491 F.3d at 659-60.

Halbrook claims $800 per hour based on his unique qualifications in this case and the above comparative rates. He has published five books (two cited by the Supreme Court in *Heller* and *McDonald*) and numerous law review articles on the Second and Fourteenth Amendments, has litigated the very incorporation issue resolved here for thirty years, and has argued and written briefs in Supreme Court cases multiple times. Halbrook Dec., 6-8. In support of the public interest in promoting Second Amendment rights, Halbrook charged NRA only $225 per hour. *Id.* at 10. Defendants, who violated the constitutional rights vindicated in this litigation, are not entitled to benefit from counsel's generosity. *Barrow*, 977 F.2d at 1105.

Defendants argue that Halbrook should be paid $539 per hour, the figure for Mr. Gura in the McDonald fee settlement. Jt. State. 9-10. The basis for Mr. Gura's settling for that fee would be speculative, and indeed he claimed a base rate of $790 per hour in the *Heller* fee litigation. *Id*. at 7 n.1. Defendants have produced no evidence regarding Mr. Gura's qualifications, including his years of litigation experience since law school or prior knowledge

---

[19] Halbrook Dec., Ex. J, 13. In *Brown*, the fee awards were $276,000 in the district court and $94,000 in the court of appeals, and $1,144,602 was sought in the Supreme Court. *Id*. at 4, 17. If awarded, total fees in that case would be $1,514,602.

of, litigation involving, or publications (if any) on the incorporation issues in this litigation prior to undertaking this case.

In *Heller*, the three firms representing D.C. had, during 2007-08, "standard rates" for attorneys "11 to 20 years" out of law school of $640 to $800 per hour, and for attorneys "20 + years" out of law school of $760 to $950 per hour. Halbrook Dec. 9 (quoting D.C. filing). The cost to just one of the three firms, O'Melveny & Meyers, which worked pro bono, was "well over $1 million." *Id.* (interview with counsel). That same firm filed an *amicus* brief in the Supreme Court in *McDonald*, as did other firms charging as much as $750, $905, and $1,075 per hour. *Id.* (citing *National Law Journal* sampling).

In its action against Oak Park, NRA was represented by Freeborn & Peters as local counsel. William Howard of that firm, who has 25 years experience in complex litigation, customarily charges $525 per hour but charged NRA $475 per hour for this case. Howard Dec., 1-2. In its action against Chicago, NRA was represented by Brenner, Ford, Monroe & Scott as local counsel. Stephen Kolodziej of that firm, who has 18 years experience in civil litigation, including numerous civil rights cases, charged NRA $300 per hour, which is less than the market rate. He would qualify for $475 per hour under the Laffy Matrix of the U.S. Department of Justice. Kolodziej Dec., 1-2.

Defendants claim that local counsel should be paid only $300 per hour, the rate that local counsel in McDonald, David Sigale, settled for. Jt. State. 13.[20] But Mr. Sigale, whose qualifications are not documented, may have settled for any number of reasons. The documentation submitted by Howard and by Kolodziej with their declarations establish that $475 per hour is reasonable.

---

[20] Defendants do not object to the hourly rates paid to other Freeborn attorneys.

### III. DEFENDANTS' SETTLEMENT WITH *MCDONALD* COUNSEL IS IRRELEVANT TO REASONABLE FEES IN THIS CASE

Defendants assert that the two NRA cases "were no more than 'tag-along' pieces of clone litigation to *McDonald*." Jt. State., 5. Since the Supreme Court granted certiorari and rendered its ruling in *McDonald*, defendants suggest that the NRA should recover no more in fees than the amount in defendants' settlement with the McDonald plaintiffs. *Id*.

As an initial matter, defendants cite no precedent restricting an award of reasonable fees of some parties to the amount of the settlement of other parties. The basis of the fee settlement between defendants and McDonald counsel is unknown. What is clear is that hours and fees recited in the McDonald settlement reflect neither what it took to win this case nor the reasonable fees to which the NRA litigants are entitled here.

Furthermore, defendants' argument is premised on the faulty assumption that the McDonald plaintiffs litigated this case in a superior manner and that the NRA just relied on them. To the contrary, the NRA's principal argument (based on the Due Process Clause), not McDonald's principal argument (based on the Privileges-or-Immunities Clause), won the case.

Supreme Court Rule 12.6 secured the NRA's right to participate before the Court. And not only did the NRA exercise this right by filing opening and reply briefs, but it also secured the Court's leave to participate in oral argument. *See supra*, footnotes 3&4. Before the Court, the NRA principally argued that the Second Amendment should be incorporated against the States by the Due Process Clause. *See* Brief for Respondents NRA *et al.* in Support of Petitioners, 2009 WL 3844394 (Nov. 16, 2009); Trans. Oral Argument, 2010 WL 710088, *18 (Mar. 2, 2010) (Paul Clement).

McDonald counsel, by contrast, focused on the Privileges-or-Immunities Clause, devoting 55 pages of the Argument in Petitioners' Brief to that topic (pp.9-65), leaving only 7

pages on the Due Process Clause (pp. 66-72). *See also McDonald*, 130 S.Ct. at 3028 (characterizing McDonald's Privileges-or-Immunities argument as "Petitioners' primary submission" and Due Process "[a]s a secondary argument").

At argument, McDonald's Privileges-or-Immunities submission prompted sharp questioning from the Justices. *See, e.g.,* Trans. Oral Argument, 2010 WL 710088, *6-7 (Mar. 2, 2010) (Justice Scalia) ("[W]hy are you asking us to overrule 150, 140 years of prior law, when . . . you can reach your result under substantive due [process] . . ., unless you are bucking for . . . a place on some law school faculty . . . ?"); *id.* at *60 (Justice Kennedy); *id.* at 5 (Justice Ginsburg). The contrast with NRA counsel's opening argument was stark – "Under this court's existing jurisprudence, the case for incorporating the Second Amendment through the Due Process Clause is remarkably straightforward." *Id*. at *18 (Paul Clement); *see also* Tony Mauro, *In Chicago Gun Case, Supreme Court Sounds Note of Caution*, BLOG OF LEGAL TIMES (March 2, 2010, 11:49 AM), http://legaltimes.typepad.com/blt/2010/03/in-chicago-gun-case-supreme-court-sounds-note-of-caution.html.

Indeed, in its controlling opinion, *see Marks v. United States*, 430 U.S. 188, 193 (1977), a plurality of the Court, after a mere two pages of discussion, concluded:

> For many decades, the question of the rights protected by the Fourteenth Amendment against state infringement has been analyzed under the Due Process Clause of that Amendment and not under the Privileges or Immunities Clause. We therefore decline to disturb the *Slaughter-House* holding.

*McDonald*, 130 S. Ct. at 3030-31.

The rest of the opinion consumed some 20 pages and was devoted to the holding "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right

recognized in *Heller*." *Id*. at 3050.[21] That, of course, was NRA's primary argument. The NRA cases were anything but, in defendants' words, "'tag-along' pieces of clone litigation to *McDonald*." Jt. State., 5.

## **CONCLUSION**

The Court should award the plaintiffs in these two cases a total of $1,727,160.71 in attorneys fees and expenses against defendants Chicago and Oak Park, to be jointly and severally liable therefor. The Court should also award plaintiffs in *NRA v. Chicago* an additional $142,109.60 in fees and expenses against defendant Chicago. The Court should award plaintiffs in *NRA v. Oak Park* an additional $326,052.98 in fees and expenses against defendant Oak Park. Finally, plaintiffs should be given leave to supplement this motion with additional fees and expenses incurred.

Dated: January 18, 2012.

                                                      **NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., Dr. KATHRYN TYLER, VAN F. WELTON and BRETT BENSON**
                                                      Plaintiffs

                                                      BY:   s/ Stephen A. Kolodziej
                                                                One of Their Attorneys

| | |
|---|---|
| Stephen P. Halbrook | Stephen A. Kolodziej |
| Attorney at Law | Ford & Britton, P.C. |
| 3925 Chain Bridge Road, Suite 403 | 33 North Dearborn Street, Suite 300 |
| Fairfax, VA 22030 | Chicago, Illinois 60602 |
| Tel. (703) 352-7276 | Tel (312) 924-7500 |
| Fax (703) 359-0938 | Fax (312) 924-7516 |

---

[21]   Justice Thomas concurred, agreeing with the other four Justices that Second Amendment rights are fully protected by the Fourteenth Amendment. While he would have relied on the Privileges-or-Immunities Clause, his agreement with critical portions of the plurality opinion ensured that all plaintiffs would prevail. *Id*. at 3058 (Thomas, J., concurring).

**CERTIFICATE OF SERVICE**

I, Stephen A. Kolodziej, an attorney, certify that on this, the 18th day of January, 2012, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago - Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois  60602
Tel:    (312)   744-4342
Fax:    (312)   742-3925

and that I caused a copy to be served by U.S. Mail on:

Ranjit Hakim
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

s/ Stephen A. Kolodziej
Stephen A. Kolodziej
Counsel for Plaintiffs

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR ATTORNEYS FEES / DISBURSEMENTS**

**INDEX OF EXHIBITS**

| **Exhibit** | **Description** |
|---|---|
| 1 | Joint Statement Pursuant to Local Rule 54.3(e) dated 12/19/11 |
| 2 | Submission of National Rifle Association of America, Inc., et al. Pursuant to Local Rule 54.3(d) dated 08/05/11 |
| 3 | Declaration of Stephen P. Halbrook with Exhibits A through J, dated 08/04/11 and Supplemental Timesheets for services rendered through 11/11/11 submitted 11/17/11 |
| 4 | Declaration of David H. Thompson, with Exhibits A through G, dated 08/03/11 |
| 5 | Declaration of William N. Howard, with Exhibits A through F, dated 07/29/11 and Supplemental Invoices for services rendered through 08/31/11 submitted 11/17/11 |
| 6 | Declaration of Stephen A. Kolodziej dated 08/02/11 (including invoices) |
| 7 | Affidavit of Kevin P. Martin, with Exhibits A through J, dated 08/04/11 |
| 8 | Declaration of Paul D. Clement , with Exhibits 1 (including Exhibits 1-A through 1-E)  through 6, (undated) and Corrected Exhibits 1-A through 1-C submitted 11/17/2011 |