**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3696 |
| VILLAGE OF OAK PARK, et al., | ) ) ) | |
| Defendants. | ) ) | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 3697 |
| CITY OF CHICAGO, et al., | ) ) ) | |
| Defendant. | ) ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS
NATIONAL RIFLE ASS'N. *ET AL.* MOTION FOR ATTORNEY'S FEES**

**Introduction**

Pursuant to this Court's order from the bench when this motion was presented at the status hearing on January 25, 2012, Plaintiffs hereby submit this supplemental memorandum. This Court sought clarification of the following two matters: (1) the time periods (historic or current) that are the basis of the various hourly rates being sought, and (2) the need for multiple attorneys and firms doing work on the litigation. As the following sets forth, the hourly rates being sought are based on the periods when the services were rendered rather than current rates. Further, this case was staffed according to an appropriate division of labor, without duplicative efforts, for a complex case litigated all the way to the Supreme Court and back.

1

## I. HOURLY RATES FOR FEES BEING SOUGHT ARE BASED ON HISTORICAL RATES WHEN SERVICES WERE RENDERED, NOT CURRENT RATES

The hourly rates sought are the reasonable rates for the historical time periods in which services were actually rendered, not a higher, current rate reflecting the passage of time. Indeed, counsel in some instances reduced their hourly rates for this litigation or did the equivalent by disregarding time actually worked in the exercise of billing judgment. Counsel did not seek enhanced rates on the basis that being paid later has less value than being paid earlier, even though case law supports either such an enhancement or interest.

The hourly rates claimed for Goodwin Procter, which worked on this case only during the Supreme Court phase, were the standard hourly rates that the firm members charged commencing October 1, 2009. Those rates increased in 2010, but the increased rates are not sought here.[1]

For most of this litigation (104.1 hours), Paul Clement billed at the rate of $1020 per hour beginning on January 15, 2010, and concluding on February 10, 2011.[2] Three other attorneys in King & Spalding/Bancroft had modest increases in hourly rates over the same periods.[3]

The rates claimed for Cooper and Kirk were the rates actually charged by the firm at the time services were rendered.[4] While rates for two attorneys increased annually, those were the actual rates charged during each of those years.[5]

---

[1] Exhibit 7, Martin Declaration ["Dec."] 4, Ex. C. Exhibits 1-8 were previously filed with the Motion for Attorney's fees. Exhibits 9 and 10 are filed herewith with this supplemental memorandum.

[2] Joint Statement Pursuant to Local Rule 54.3(e) at 2 ("Jt. State."), Ex. A to Motion for Attorney's Fees; Exhibit 8, Clement Dec., Ex. 1-A, at 2-3. Clement initially billed at $925 per hour for 15 hours beginning on December 1, 2009, and at $970 for 5 hours beginning January 4, 2010. Ex. 1-A, at 1.

[3] Jt. State. 2-3; Exhibit 8, Clement Dec., Ex. 1-A.

By way of comparison, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the three major firms representing D.C. had, during 2007-08, "standard rates" for attorneys "20 + years" out of law school of $760 to $950 per hour.[6] One of those firms, O'Melveny & Meyers, filed an amicus brief in the Supreme Court in this case, as did other firms charging as much as $750, $905, and $1,075 per hour.[7]

Based on all of the above comparative rates, which are based on the previous years identified and not today, and in recognition of his unique qualifications in this case, Stephen Halbrook claims $800 per hour as a reasonable fee. See Memo. in Support of NRA Motion for Attorney's Fees at 7, 11. Defendants may not take advantage of the low fee Halbrook actually charged NRA out of a partial pro bono motivation. As this Court noted in *Strama v. Peterson*, 561 F. Supp. 997, 998-99 (N.D. Ill.1983):

> Losing civil rights defendants have not been successful in challenging awards to lawyers acting pro bono, or salaried lawyers, on the ground plaintiffs would not in fact have had to pay the amount of fees actually awarded. . . . . Were the rule otherwise, the civil rights violator would stand to obtain a windfall from the fact the plaintiff had to resort to a Legal Assistance Foundation lawyer or an ACLU volunteer lawyer.

In its action against Oak Park, NRA was represented by Freeborn & Peters as local counsel. William Howard of that firm billed at a rate of $450 for 5.3 hours on August 14, 2008, but increased his rate to $475 for the bulk of his work (335.2 hours) hereafter. Jt. State. 4. These

---

[4]Jt. State. 3; Exhibit 4, Thompson Dec. 4.

[5]David Thompson charged $515 (2009), $535 (2010), and $565 (2011), while Jesse Panuccio charged $335 (2008), $345 (2009), and $375 (2010). Exhibit 4, Thompson Dec., Ex. A at 6-7.

[6]Exhibit 3, Halbrook Dec. 9 (quoting D.C. filing in *Heller*).

[7]Exhibit 3, Halbrook Dec. 9. See *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3025 (2010).

3

were lower than his customary rates for the relevant years, which were $525 (2009), $540 (2010), and $545 (current).[8]

In its action against Chicago, NRA was represented by Brenner, Ford, Monroe & Scott as local counsel. Based on prevailing market rates during the years 2008-2011, Stephen Kolodziej of that firm would qualify for $475 per hour.[9]

In sum, to address this Court's concern, fees sought are based on the reasonable rates during the respective years of this litigation rather than at current market rates. Even so, as *Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989), instructed:

> Clearly, compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise – is within the contemplation of the statute.

Based on the above, *Shott v. Rush-Presbyterian-St. Luke's Medical Center*, 338 F.3d 736, 745 (7th Cir. 2003), more particularly explained:

> In recognizing and applying this principle, we have noted that a court may compensate for delay in one of two ways: (i) it may award fees based on the attorney's rates at the time of the award (the "current rate" method) or (ii) it may award fees based on the attorney's rates at the time the services were rendered and add prejudgment interest on that amount (the "historical rate plus interest" method). We have also stated that the historical-rate-plus-interest method is probably the most accurate and straightforward. (Citations omitted.)

Finally, it is not relevant whether counsel was actually paid when services were rendered by the prevailing party. As this Court noted in *Brandt v. Schal Associates, Inc.*, 131 F.R.D. 512, 521-22 n.18 (N.D. Ill.1990), *aff'd*, 960 F.2d 640 (7th Cir. 1992), "the delay factor that is

---

[8]Exhibit 9, Howard Supp. Dec. 2. Rachael Atterberry of that firm showed a minor fee increase from 2008 to 2009. Jt. State. 4.

[9]Exhibit 10, Kolodziej Supp. Dec., 2-3.

4

operative where lawyer nonpayment is involved translates directly into the additional real-world cost to the paying client that stems from its having been deprived of the use of money that it has been forced to pay to its lawyers, instead of that money's being available for all the client's other business purposes."

In sum, plaintiffs have appropriately sought fees at historical rates, not current rates, and thus are entitled to interest. That is the case regardless of the extent to which counsel may or may not have been paid a full market rate as the case progressed.

## II. MULTIPLE COUNSEL PROVIDED SERVICES IN AN EFFICIENT DIVISION OF LABOR IN THIS COMPLEX LITIGATION

This Court directed counsel to explain the need for the number of attorneys and firms representing plaintiffs in these cases, and to address whether time spent conferring and reviewing work is chargeable to the non-prevailing party.

When this motion was presented, this Court referred to his Supreme Court experience while in private practice. In this connection, counsel reviewed *Government & Civic Employees Organizing Committee, CIO v. Windsor*, 353 U.S. 364 (1957) (*per curiam*), a challenge to labor union restrictions under the due process and equal protection clauses of the Fourteenth Amendment, which references "Mr. Milton I. Shadur, Chicago, Ill., for the appellants." The Brief of Appellants in that case, 1957 WL 87503, includes the names of some of the most distinguished lawyers of the time, and they were associated with four separate law firms. They included future Supreme Court Justice Arthur J. Goldberg and David E. Feller,[10] who were senior partners in Goldberg, Feller & Bredhoff, Washington, D.C.;[11] Herbert S. Thatcher, a

---

[10] Feller "argued a multitude of cases before the U.S. Supreme Court . . . ." http://www.law.berkeley.edu/news/2003/david%20feller.html.

[11] Goldberg was with that firm from 1952 to 1961, when he was appointed Secretary of Labor. http://goldberg.law.northwestern.edu/mainpages/bio.htm.

5

partner in Woll, Glen and Thatcher, Washington, D. C.;[12] and Milton I. Shadur, Chicago, who argued the case.[13] The names of all of these attorneys appear multiple times as counsel in Supreme Court litigation. Counsel also included Cooper, Mitch & Black, Birmingham. Partner Buddy Cooper had clerked for Justice Black, and the firm became "the leading law firm in the South representing labor unions and workers."[14]

The use of multiple firms and attorneys in the above case, all with Supreme Court experience, resembles that in the Supreme Court phase of this case. Also similar to this case, that case was litigated in the lower court by multiple firms and attorneys on behalf of the plaintiffs.[15] Both cases involved constitutional issues of supreme importance to millions of Americans – the First Amendment right to associate in a labor union in the former case, and the Second Amendment right to keep and bear arms in the latter. Such cases of the greatest public interest demand the highest performance by the most qualified counsel.

Plaintiffs have described in detail the course of this litigation and the role played by the different firms and attorneys at each stage. Memo. in Support of NRA Motion for Attorney's Fees 2-8 (detailing services and hours). They have further articulated the qualifications and

---

[12] The firm was General Counsel to the American Federation of Labor. http://heinonline.org/HOL/LandingPage?collection=journals&handle=hein.journals/nebklr32&div=9&id=&page=.

[13] At that time, apparently of a predecessor firm of Shadur, Krupp & Miller, probably Goldberg, Devoe, Shadur, & Mikva. See http://search.chicagolawbulletin.com/judge/gettoctext.cfm?t=2GbjEkMJMrA=.

[14] http://www.wdklaw.com/main.cfm?actionId=globalShowStaticContent&screenKey=cmpFirm&show=history&s=whatleydrake.

[15] "Arthur J. Goldberg, David E. Feller, and Thomas E. Harris, Washington, D.C., and Cooper Mitch & Black, Birmingham, Ala., for plaintiffs." *Government & Civic Employees Organizing Committee, CIO v. Windsor*, 146 F. Supp. 214, 215 (N.D. Ala. 1956).

contributions of each attorney. *Id*. at 8-12. While several attorneys from each firm are listed as having worked on the case, a careful review indicates that only a few attorneys accumulated a substantial quantity of hours. Jt. State. 2-4.

In the District Court, the Court of Appeals, and the cert. petition stage, lead counsel was Stephen Halbrook. Before this litigation commenced, William Howard represented the NRA in successfully negotiating with several Chicago area jurisdictions to modify their ordinances, thus avoiding the costs of litigation. However, Oak Park and the City of Chicago chose to defend their ordinances, forcing the NRA to expend legal fees to pursue this litigation. Mr. Howard's firm felt that it may have had a conflict in a suit against the City of Chicago, which was approached about waiving that conflict, but refused. Thus, Howard's firm represented the NRA only in the suit against Oak Park, while Stephen Kolodziej's firm was chosen to represent the NRA in the suit against Chicago.[16]

However, no duplication of services existed. Where otherwise similar research was needed or identical documents had to be prepared, Howard's firm usually provided the service and Kolodziej simply followed the same course or copied the pertinent document.[17] In particular, Howard's firm provided significant consultation regarding local rules and practices, managed the drafting and filing of multiple motions, conducted extensive legal research, and assisted in the preparation for oral argument in the Court of Appeals. It also spear-headed the procedural strategy which streamlined this litigation in the District Court via Rule 16(c)(2), F. R. Civ. P.[18] This strategy may have cut the work to be done on this matter by one-half or more.[19]

---

[16]Exhibit 9, Howard Supp. Dec., 4-5.

[17]See Exhibit 3, Halbrook Dec., at 2-3.

[18]See NRA's Rule 16 Motion for Briefing and Disposition of Second Amendment Incorporation Issue and to Stay Discovery Pending Same. Docu. # 16.

Daniel Dooley of the same firm provided significant services at an appropriate lower rate; the others who billed in the same firm expended minimal hours providing specialized services.[20]

Besides the above, the only other counsel involved in the Court of Appeals was Cooper and Kirk, which expended just a handful of hours assisting Halbrook with strategy concerning an en banc petition and with a moot court, and later in the Supreme Court with revisions to the cert. petition and reply brief.[21]

In the Supreme Court, the NRA continued to be represented by Halbrook with the addition of the firm of Goodwin Procter, particularly attorneys Stephen Poss, Kevin Martin, and Joshua Lipshutz. This team collaborated to prepare NRA's opening brief.[22] Cooper and Kirk expended a meager seven hours offering revisions to the brief.[23]

Former U.S. Solicitor General Paul Clement was then retained by NRA to conduct its oral argument and to bring his expertise to bear in assisting Halbrook and Goodwin Procter with the drafting of the reply brief.[24] For the reply brief, counsel had to review not only the brief of respondents, but also a total of fifty *amici curiae* briefs. Cooper and Kirk did not participate in preparation of the reply brief but expended eight hours in matters related to the moot court for

---

[19]Exhibit 9, Howard Supp. Dec., 3-4. Counsel in the McDonald suit piggy-backed onto this procedural strategy. *Id*. at 3.

[20]*Id*. at 3-4.

[21]Exhibit 4, Thompson Dec., Ex. A, at 2-3.

[22]Exhibit 3, Halbrook Dec. 3.

[23]Exhibit 4, Thompson Dec., Ex. A, at 3-4.

[24]Exhibit 3, Halbrook Dec. 4-5.

8

Clement.[25] As noted, Clement argued the case before the Supreme Court. Goodwin Procter's services ended with the conclusion of Supreme Court proceedings.[26]

When the Supreme Court reversed and remanded, these cases ended up back in this Court on NRA's motions for attorney's fees. Defendants argued that plaintiffs were not prevailing parties and were not entitled to fees under *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 (2001). This Court ordered briefing by the parties, and Halbrook prepared the NRA briefs with the assistance of local counsel. After this Court ruled that plaintiffs were not prevailing parties, NRA appealed.

NRA's opening and reply briefs in the Seventh Circuit, which upheld NRA's prevailing-party status, were prepared by Halbrook, with insightful revisions provided by Paul Clement's firms.[27] Defendants contend that the issue was not sufficiently complex as to require the services of Clement and his firms. Jt. State. 8-9. The issue raised grave and novel questions under *Buckhannon*, as this Court's decision on the matter bears out. *NRA v. Village of Oak Park,* 755 F. Supp.2d 982 (N.D. Ill. 2010). Clement's participation was warranted, inasmuch as his own fees and those of all of the other attorneys for plaintiffs were at stake. Clement was well qualified to work on the issue, given that he had recently argued *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010), the Court's then-latest decision on fee recovery under 42 U.S.C. § 1988.

The Seventh Circuit decided that NRA is a prevailing party and remanded for determination of reasonable fees. Pursuant to Local Rule 54.3(d), each firm that participated in the case was

---

[25] Exhibit 4, Thompson Dec., Ex. A, at 4.

[26] Exhibit 7, Martin Affidavit, Ex. B, at 5.

[27] Exhibit 8, Clement Dec., Ex. 1-C (beginning with 1/11/11 entry), Ex. 2 (5/8-5/11/11 entries). As noted, Goodwin Procter was no longer working on the case at this point. Also, Cooper and Kirk later charged for time expended in preparing its declaration in support of fees, but did not bill for any work on the litigation over fee liability. See Exhibit 4, Thompson Dec., Ex. A, at 4-5.

9

required to review their time and work records, prepare declarations supporting the fees they thought reasonable to recover, and to submit the same to defendants.[28] Defendants have not questioned the reasonableness of the time expended by the firms representing plaintiffs in this regard.

Since this case was remanded for determination of reasonable fees, Halbrook and local counsel have carried out the obligations of plaintiffs under Local Rule 54.3, from the turning over of documents justifying the fees to defendants through the filing of the motion for fees.

The use of multiple lawyers "is a common practice, primarily because it often results in a more efficient distribution of work. . . . It allows more experienced, accomplished, and expensive attorneys to handle more complicated matters and less experienced, accomplished, and expensive counsel to handle less complicated ones." *Gautreaux v. Chicago Housing Authority,* 491 F.3d 649, 661 (7th Cir. 2007), citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.1988).[29] In *Gautreaux*, "the time spent on intra-team communications was compensable. There is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Id*. *See Rabin v. Wilson-Coker*, 425 F. Supp.2d 269, 273-74 (D. Conn. 2006) ("extensive consultation among a team of attorneys was necessary because of the pace of the litigation, its complexity, and the intensity of the defendant's opposition," including for an attorney who "did not enter an appearance" but "consulted extensively with plaintiffs' counsel.").

---

[28]Since these fee proceedings are ongoing, plaintiffs are entitled to file supplemental documents showing further reasonable fees.

[29]Noting that use of multiple lawyers "tak[es] advantage of the division of labor," *Kurowski* added that in that case, "The scholar did the research, the litigator the litigating." *Id*. at 776. While that was not a precedent-setting case as was this one, an efficient division of labor here took advantage of Halbrook's scholarly background, Goodwin Procter's litigation expertise, and Clement's experience in Supreme Court advocacy.

Following *Roe v. Saenz,* 526 U.S. 489 (1999), which invalidated a state law under the Fourteenth Amendment, the district court held regarding the resultant fee petition: "Given that this case centered almost exclusively on complex constitutional questions, and that the majority of the hours billed by Roe's attorneys were for litigation at the Supreme Court level, it was appropriate to heavily staff the case with senior litigators." *Roe v. Saenz*, No. CIV-S-97-0529DFL JFM, 2000 WL 33128689, *3 (E.D. Cal. Nov. 20, 2000).

The attorney staffing in this case was less than or typical to that in many other Supreme Court cases involving civil rights in general and the Second Amendment in particular.[30] In *Heller*, three major law firms and the D.C. Attorney General's office represented the District.[31] Chicago and Oak Park fielded a respectfully-large team for this litigation led by experienced Supreme Court litigators such as James Feldman and Benna Ruth Solomon,[32] not to mention the armies of lawyers that filed fifty *amici curiae* briefs in this case.

---

[30]*E.g.*, see attorney and firm listings in *Lewis v. City of Chicago, Ill.*, 130 S. Ct. 2191, 2194-95 (2010), and *Perdue*, 130 S. Ct. at 1669.

[31]*See District of Columbia v. Heller*, 554 U.S. 570, 572 (2008) ("Thomas C. Goldstein, Christopher M. Egleson, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, Walter Dellinger, Matthew M. Shors, Mark S. Davies, Brianne J. Gorod, . . . Joseph Blocher, . . . O'Melveny & Myers LLP, Washington, DC, Peter J. Nickles, Interim Attorney General, Todd S. Kim, Solicitor General, Counsel of Record, Donna M. Murasky, Deputy Solicitor, General, Lutz Alexander Prager, Office of the Attorney General for the District of Columbia, Washington, DC, Robert A. Long, Jonathan L. Marcus, Covington & Burling LLP, Washington, DC, for Petitioners.").

[32]*See McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020, 3025 (2010) ("James A. Feldman, Special Assistant, Corporation Counsel, Washington, D.C., Mara S. Georges, Corporation Counsel of the City of Chicago, Benna Ruth Solomon, Counsel of Record, Deputy Corporation Counsel, Myriam Zreczny Kasper, Chief Assistant Corporation Counsel, Suzanne M. Loose, Assistant Corporation Counsel, Andrew W. Worseck, Assistant Corporation Counsel, Chicago, Illinois, Counsel for the City of Chicago; Raymond L. Heise, Village Attorney of Oak Park, Oak Park, Illinois, Counsel for the Village of Oak Park, Hans Germann, Ranjit Hakim, Alexandra Shea, Mayer Brown LLP, Chicago, Illinois, for Respondents City of Chicago and Village of Oak Park.").

In sum, counsel litigated this complex case with efficiency and professionalism. A careful review of their declarations and supporting time and work sheets demonstrates appropriate divisions of labor and that they carried out necessary tasks without duplication.

## CONCLUSION

The Court should grant plaintiffs' request for reasonable attorney's fees.

Dated: February 15, 2012.

                                        **NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., Dr. KATHRYN TYLER, VAN F. WELTON and BRETT BENSON**
Plaintiffs

BY:   s/ Stephen A. Kolodziej
       One of Their Attorneys

| | |
|---|---|
| Stephen P. Halbrook | Stephen A. Kolodziej |
| Attorney at Law | Ford & Britton, P.C. |
| 3925 Chain Bridge Road, Suite 403 | 33 North Dearborn Street, Suite 300 |
| Fairfax, VA 22030 | Chicago, Illinois 60602 |
| Tel. (703) 352-7276 | Tel (312) 924-7500 |
| Fax (703) 359-0938 | Fax (312) 924-7516 |

**CERTIFICATE OF SERVICE**

I, Stephen A. Kolodziej, an attorney, certify that on this, the 15th day of February, 2012, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago - Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois  60602
Tel:  (312)  744-4342
Fax:  (312)  742-3925

and that I caused a copy to be served by U.S. Mail on:

Ranjit Hakim
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

                                                s/ Stephen A. Kolodziej
                                                Stephen A. Kolodziej
                                                Counsel for Plaintiffs

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' NATIONAL RIFLE ASS'N.** *et al..* **MOTION FOR ATTORNEY'S FEES**

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 9 | Supplemental Declaration of William N. Howard dated February 15, 2012 |
| 10 | Supplemental Declaration of Stephen A. Kolodziej dated February 10, 2012 |