**FILED**

4/4/2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al., | ) ) ) | Case No. 08-CV-3697 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) ) ) | |

---

BRIEF OF GURA & POSSESSKY, PLLC AND LAW FIRM OF
DAVID G. SIGALE, P.C. AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT

---

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547/Fax 630.596.4445

Counsel for *Amici Curiae*

TABLE OF CONTENTS

INTERESTS OF *AMICI CURIAE*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      THE SUPREME COURT'S DECISION WAS NOT BASED ON ANY
        PARTICULAR INCORPORATION THEORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     *McDONALD* PLAINTIFFS PRESERVED AND ARGUED THE CORRECT,
        ULTIMATELY SUCCESSFUL DUE PROCESS INCORPORATION THEORY,
        WHILE NRA OFTEN ADVANCED AN ERRONEOUS VIEW OF DUE PROCESS
        INCORPORATION NEVER ACCEPTED BY THE SUPREME COURT. . . . . . . . . . . . 3

III.    *McDONALD* PLAINTIFFS' STRATEGY WAS REQUIRED FOR VICTORY. . . . . . . . 8

IV.     NRA HARMED THE *McDONALD* CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      THIS COURT'S FEE AWARD IN *McDONALD* REFLECTS THE FAIR MARKET
        VALUE OF WINNING THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

Cases

*Benton* v. *Maryland,*
    395 U.S. 784 (1969)............................................................... 6, 7

*City of Chicago* v. *Morales,*
    527 U.S. 41 (1999) ................................................................. 9

*Covington* v. *District of Columbia,*
    57 F.3d 1101 (D.C. Cir. 1995)................................................. 15

*District of Columbia* v. *Heller,*
    554 U.S. 570 (2008)............................................................ 9, 13-15

*Duncan* v. *Louisiana,*
    391 U.S. 145 (1968)............................................................. 5, 7

*Gonzales* v. *Carhart,*
    550 U.S. 124 (2007)............................................................. 10

*Marks* v. *United States,*
    430 U.S. 188 (1977)............................................................. 2, 3

*McDonald* v. *City of Chicago,*
    N.D. Ill. Case No. 08-CV-3645, 130 S. Ct. 3020 (2010)...................... passim

*Nordyke* v. *King,*
    563 F.3d 439 (9th Cir.), *reh'g en banc granted,* 575 F.3d 890 (2009). ............... 7

*Palko* v. *Connecticut,*
    302 U.S. 319 (1937)............................................................. 7

*Perdue* v. *Kenny A.,*
    130 S. Ct. 1662 (2010)......................................................... 14

*Saenz* v. *Roe,*
    526 U.S. 489 (1999) ............................................................. 9

*Salazar* v. *District of Columbia,*
    123 F. Supp. 2d 8 (D.D.C. 2000).............................................. 15

*The Slaughter House Cases,*
    83 U.S. (16 Wall.) 36 (1873)................................................ 3, 4, 13, 14

*United States* v. *Cruikshank*,
    92 U.S. 542 (1875). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wachovia Sec., LLC* v. *Banco Panamericano, Inc.*,
    No. 10-1203, 2012 U.S. App. LEXIS 5862 (7th Cir. March 21, 2012). . . . . . . . . . . . . . . . 6

*Washington* v. *Glucksberg*,
    521 U.S. 702 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


Other Authorities

Alan Gura, Ilya Shapiro, & Josh Blackman, *The Tell-Tale Privileges*
    *or Immunities Clause*, 2010 Cato Sup. Ct. Rev. 163 (2010). . . . . . . . . . . . . . . . . . . . . . . . . 8

David S. Cohen, *The Paradox of McDonald* v. *City of Chicago*,
    79 GEO. WASH. L. REV. 823 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11

Editorial, *The Second Amendment's Reach*,
    N.Y. TIMES, March 1, 2010, at A22, available at
    http://www.nytimes.com/2010/03/02/opinion/02tue1.html
    (last visited March 22, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

http://www.chicagoguncase.com/case-filings/ (last visited March 22, 2012). . . . . . . . . . . . . . . . . 6

Justice Antonin Scalia, *Foreward*,
    31 HARVARD J. L. & PUB. POL'Y 871 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mark Tushnet, *The Future of the Second Amendment*,
    1 Alb. Gov't L. Rev. 354 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Oral Argument, Seventh Cir. Nos. 08-4241, 4243, 4244,
    http://www.ca7.uscourts.gov/tmp/GP1FG77C.mp3
    (last visited March 25, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Robert Barnes, *Gun case presents quandary for Supreme Court justices*,
    WASHINGTON POST (March 1, 2010), available at
    http://www.washingtonpost.com/wp-dyn/content/article/2010/02/28/
    AR2010022803985.html (last visited March 22, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

BRIEF OF GURA & POSSESSKY, PLLC AND LAW FIRM OF
DAVID G. SIGALE, P.C. AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT

INTERESTS OF *AMICI CURIAE*

*Amici Curiae* Gura & Possessky, PLLC and Law Firm of David G. Sigale, P.C., were

counsel for the Plaintiffs in *McDonald* v. *City of Chicago*, N.D. Ill. Case No. 08-CV-3645, 130 S.

Ct. 3020 (2010). In moving for an award of attorney fees and costs, Plaintiff National Rifle

Association of America, Inc. ("NRA") claims complete credit for the victory in *McDonald*,

attacking *amici*'s professional competence, and further speculating as to *amici*'s financial health.

*Amici* plainly have an interest in correcting the record in this regard. More importantly,

*amici* possess a unique perspective regarding the reasonableness of Plaintiffs' fee request, which

would substantially aid the Court in assessing that motion. As counsel, *amici* believe themselves

obligated to share information with the Court that may be of substantial benefit in rendering a fully-

informed and accurate decision on this matter of great public importance.

SUMMARY OF ARGUMENT

NRA claims that "the [Supreme] Court rejected *McDonald*'s primary argument based on

the Privileges-or-Immunities Clause, and agreed with the NRA's argument based on the Due

Process Clause." NRA Motion, at 5. "[T]he Supreme Court rejected *McDonald*'s approach and

agreed with that of the NRA." *Id.* at 6. "[T]he NRA's principal argument . . . won the case." *Id.* at

13. None of this is true. NRA's claim that "the Supreme Court" singularly accepted or rejected any

theory is demonstrably false as a matter of law. And NRA misrepresents not only *McDonald*

Plaintiffs' position in the case, but also its own. *McDonald* Plaintiffs fully argued for Due Process

incorporation, while NRA's original, erroneous due process arguments failed to get its petition for a

writ of certiorari granted, much less a single Supreme Court vote on the merits.

1

NRA failed to preserve the correct Due Process Clause argument in the lower courts, and its strategic choices were sufficiently poor that had NRA's approach prevailed, the case would have assuredly been lost. But for *McDonald* Plaintiffs' efforts, there would not be an NRA petition for attorney fees. Finally, NRA's uninformed speculation regarding *McDonald* Plaintiffs' settlement position warrants some response.

ARGUMENT

I.    THE SUPREME COURT'S DECISION WAS NOT BASED ON ANY PARTICULAR
       INCORPORATION THEORY.

In *McDonald*, four Justices joined an opinion holding that the Second Amendment is incorporated as against the States via the Due Process Clause. But one Justice concurred only in part and in the judgment, specifically rejecting the Due Process Clause incorporation theory and instead concluding that Second Amendment rights apply as against the States under the Privileges or Immunities Clause. Justice Alito, author of the due process-based opinion, "announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II-A, II-B, II-D, III-A, and III-B . . . and an opinion with respect to Parts II-C, IV, and V . . ." *McDonald*, 130 S. Ct. at 3026. No majority favored any one theory of the case.

NRA suggests that Justice Alito's opinion with respect to the Due Process Clause is controlling under the rule that "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks* v. *United States*, 430 U.S. 188, 193 (1977) (quotation omitted); NRA Br., at 14. But no Justice other than the four joining that opinion concurred on due process grounds. All five other Justices explicitly *rejected* due process incorporation. At most, *McDonald*'s narrowest grounds are that the Second Amendment is "fully applicable to the States." *McDonald*, 130 S. Ct. at 3058 (Thomas, J., concurring in the

judgment). "[T]he precedential value of *McDonald* cannot be ascertained by the 'narrowest grounds' rule established by *Marks* v. *United States*." David S. Cohen, *The Paradox of McDonald* v. *City of Chicago*, 79 GEO. WASH. L. REV. 823, 832 (2011).

II.     *McDONALD* PLAINTIFFS PRESERVED AND ARGUED THE CORRECT, ULTIMATELY SUCCESSFUL DUE PROCESS INCORPORATION THEORY, WHILE NRA OFTEN ADVANCED AN ERRONEOUS VIEW OF DUE PROCESS INCORPORATION NEVER ACCEPTED BY THE SUPREME COURT.

NRA's underlying presumptions, that it primarily or uniquely argued the Due Process theory endorsed by the Alito plurality while *McDonald* Plaintiffs barely touched upon the theory, if at all, should be carefully examined. Both assertions are wrong.

*McDonald* Plaintiffs' complaint positioned the Due Process Clause claim *ahead* of the Privileges or Immunities Clause claim. *Compare* Complaint, Dkt. 1, No. 08-3645, ¶¶ 48 (Due Process Clause), 49 (Privileges or Immunities Clause); *see also* ¶ 34 (Second Amendment right "fundamental," a Due Process incorporation predicate). *McDonald*'s dispositive motions likewise emphasized the Due Process Clause argument. After setting out the Privileges or Immunities argument only to preserve the issue, conceding fully that the Court could not grant relief on that basis, *McDonald* Plaintiffs sought relief under the Due Process Clause. *See, e.g.* Summary Judgment Br., 08-3645, Dkt. 34, 7/31/08, at 8-13. *McDonald* Plaintiffs' appellate briefing tracked this approach. *See, e.g.* Appellants' Br., Seventh Cir. No. 08-4244, at 25-42.

Beyond preserving the issue, *McDonald* counsel did not present argument on the Privileges or Immunities Clause to the Seventh Circuit. Oral Argument, Seventh Cir. Nos. 08-4241, 4243, 4244, http://www.ca7.uscourts.gov/tmp/GP1FG77C.mp3 (last visited March 25, 2012) at 9:57, 30:51, 33:46 (*McDonald* argument based on Due Process Clause). Nonetheless, Judge Easterbrook stated, "I entirely appreciate your argument that the *Slaughter House Cases*[, 83 U.S. (16 Wall.) 36

3

(1873)] were wrongly decided, I thought David Currie proved that very nicely some time ago." *Id.* at 3:56. "There's a lot of rumbling about the *Slaughter House Cases* even among the Justices." Judge Easterbrook, *id.* at 17:40. "One can only imagine William Winslow Crosskey coming back to debate this issue." Judge Easterbrook, *id.* at 18:40. Chicago's counsel acknowledged, "it [the Privileges or Immunities argument] would be ripe, no doubt, for someone to present to the Supreme Court." *Id.* at 18:48.

Rather than dismiss *McDonald*'s Due Process Clause arguments as "secondary," NRA should be more forthcoming as to what Due Process arguments, exactly, *McDonald* Plaintiffs did not allegedly advance. Nothing in Justice Alito's Due Process Clause analysis is missing from *McDonald* Petitioners' briefs before the Court. Such specificity would be helpful, especially in light of NRA's poor understanding of the Due Process Clause issue.

NRA's motion invites a comparison of how each set of plaintiffs argued for Due Process Clause incorporation. *Amici* welcome this comparison. NRA did not exhibit an understanding of the modern selective incorporation doctrine until the reply stage at the Seventh Circuit. Until then, it alternately advanced an "implicit incorporation" argument position, and a novel position based on alleged distinctions between "substantive" and "non-substantive" rights. While a belated nod to the relevant Due Process doctrine appeared in NRA's Seventh Circuit reply brief, that understanding again went missing from NRA's petition for a writ of certiorari.

Before this Court, and before the Seventh Circuit, NRA argued that the Due Process Clause incorporates wholesale all textually-enumerated rights, a theory of incorporation that has never been accepted. NRA posited that all rights are "fundamental" if "explicitly or implicitly protected by the Constitution," NRA Brief, Dec. 4, 2008, at 12 (citation omitted), and that "[a]s such, the Second

Amendment should be recognized as incorporated." *Id*. Rights had been incorporated upon the

"basis . . . that the respective rights have explicit constitutional recognition." *Id*. at 12. "In sum,

since the Second Amendment encompasses an explicitly-guaranteed, substantive right, it meets the

standards of the Supreme Court's jurisprudence on incorporation of fundamental rights into the

Fourteenth Amendment." *Id*. at 15.

      NRA repeated this erroneous view on appeal. "An explicitly protected right, keeping and

bearing arms is thus a fundamental right and is incorporated into the Fourteenth Amendment." NRA

Br., Seventh Cir. No. 08-4241, at 35. Aware that this is not exactly true, as the Fifth Amendment's

Grand Jury Clause and the Seventh Amendment have been held to be not incorporated, NRA

offered, without any authority, that these rights are not, like the Second Amendment, "substantive":

> Substantive guarantees in the Bill of Rights are not subject to the question of whether a
> particular procedure is necessary for due process. In recognizing substantive Bill of Rights
> guarantees to be incorporated, the Court has relied on their status as such rather on [sic]
> subjective values to determine if a constitutional right is really important.

*Id*. at 40. "In sum, since the Second Amendment encompasses an explicitly-guaranteed, substantive

right, it meets the standards of the Supreme Court's jurisprudence on incorporation of fundamental

rights into the Fourteenth Amendment." *Id*. at 42.

      NRA's implicit/substantive right due process argument is, of course, wrong, and has never

been the law. Rather, as NRA eventually figured out on reply in the Seventh Circuit (perhaps after

reading briefs filed by *McDonald* Plaintiffs from day one), the Supreme Court's modern selective

incorporation due process doctrine determines if a right is fundamental by looking to the factors set

out in *Duncan* v. *Louisiana*, 391 U.S. 145 (1968): the right's historical acceptance in our nation, its

recognition by the states (including any trend regarding state recognition), and the nature of the

interest secured by the right.

5

NRA's failure to properly assert the Due Process Clause argument before this Court, and before the Court of Appeals, would have been entirely fatal to its case. Even where preserved in the District Court, new arguments cannot be raised before the appellate courts on reply. Any argument not contained in an appellant's opening brief is waived. *See, e.g. Wachovia Sec., LLC* v. *Banco Panamericano, Inc.*, No. 10-1203, 2012 U.S. App. LEXIS 5862 at *31 (7th Cir. March 21, 2012). "Selective incorporation" does not appear anywhere in the briefs filed by NRA before this Court, nor did that term make an appearance in NRA's opening brief before the Seventh Circuit. Defendant Chicago noted the NRA, unlike *McDonald* Plaintiffs, failed to claim a modern Due Process argument. Appellee Br., Seventh Cir. No. 08-4241, at 29 & n.8. NRA responded that it did so, but could only point to its recitation of the decision in *Benton* v. *Maryland*, 395 U.S. 784 (1969), not to any argument as to how selective incorporation operates or what factors are relevant in the analysis.

NRA's apparent failure to comprehend how selective incorporation works, compared to *McDonald* Petitioners' survey of that subject, may well have explained why *McDonald*'s petition was accepted for argument on the merits while NRA's petition was held in abeyance.[1] A four-clause sentence headlined the only argument in NRA's certiorari petition. Its erroneous implicit incorporation/substantive right theory followed: "This Court's decisions incorporating substantive rights appear to have done so virtually on an *a priori* basis." Cert. Petition, No. 08-1497, at 8 (footnote omitted). "In recognizing substantive Bill of Rights guarantees to be incorporated, the Court has relied on their status as such rather on [sic] subjective values to determine if a constitutional right is really important." *Id.* at 12. NRA's petition for a writ of certiorari made only a passive reference to an allegation it had argued for selective incorporation, but contained no

---

[1]Supreme Court briefing in *McDonald*, including NRA's briefs, Chicago's briefs, and *amici*'s, are found at http://www.chicagoguncase.com/case-filings/ (last visited March 22, 2012).

discussion of that doctrine, let alone of the relevant factors for establishing selective incorporation.

NRA's arguments improved after the Court granted the *McDonald* petition, but they did not manifest an especially comprehensive or lucent understanding of selective incorporation under the Due Process Clause. Neither of NRA's two Supreme Court merits briefs mentioned the Ninth Circuit's decision in *Nordyke* v. *King*, 563 F.3d 439 (9th Cir.), *reh'g en banc granted*, 575 F.3d 890 (2009), selectively incorporating the Second Amendment, and NRA's reply brief failed to mention, let alone discuss, the four leading Supreme Court precedents on the subject, all of which are referenced extensively in both of *McDonald* Plaintiffs' merits briefs and in Justice Alito's opinion: *Duncan*, supra, 391 U.S. 145; *Benton*, supra, 395 U.S. 784; *Palko* v. *Connecticut*, 302 U.S. 319 (1937); and *Washington* v. *Glucksberg*, 521 U.S. 702 (1997). NRA's opening brief mentioned these cases, but their absence is conspicuous from NRA's reply, filed after its motion for dividing argument on the basis of its alleged Due Process Clause focus.

As noted supra, no Due Process theory in Justice Alito's opinion is missing from the *McDonald* Petitioners' briefs, and indeed, from the briefs of various *amici*. NRA's claim to be the sole source of the Due Process Clause theory adopted in that opinion is counter-factual. Particularly egregious is the claim that NRA "brought to the Court's attention the original intent and public understanding of the Fourteenth Amendment when it was proposed and adopted during Reconstruction." Halbrook Decl., at 3. Nonsense. *McDonald* plaintiffs devoted the bulk of their briefing to these originalist arguments, in a manner much more comprehensive than did NRA.

NRA totals the pages under each section heading of Petitioners' brief in *McDonald*, asserting that *amici* spent 55 pages on Privileges or Immunities and 7 pages on Due Process. Perhaps one argument was simpler? In any event, counsel should have read the brief more carefully. Much of the "Privileges or Immunities" argument dealt generally with the Fourteenth Amendment's

7

ratification history. Virtually the entirety of the Fourteenth Amendment debate relating to the States'

adherence to the Bill of Rights focused on the Privileges or Immunities Clause, not the Due Process

Clause. Professor Tushnet reviewed the problem:

> The debates over the Fourteenth Amendment's adoption are replete with comments that one
> of the Amendment's benefits would be to ensure that the South's freedmen would be able to
> protect themselves from marauding whites by guaranteeing their own right to arm
> themselves . . .[but] *all these references described the right to keep and bear arms as one*
> *of the privileges of the citizenship that the Fourteenth Amendment guaranteed . . .*

Mark Tushnet, *The Future of the Second Amendment*, 1 Alb. Gov't L. Rev. 354, 355 n.4 (2008)

(emphasis added). While the Court, and all parties, including NRA, cited this history to support the

Due Process theory, *McDonald* plaintiffs were being precise in noting exactly what it was that the

Framers were discussing.[2] Moreover, while it is true that NRA "further addressed arguments that the

Second Amendment is not fully incorporated based on principles of federalism and an

allegedly-unique dangerousness of Second Amendment rights," *id.*, these points, too, were

thoroughly covered in *McDonald*'s two merits briefs.

III.   *McDONALD* PLAINTIFFS' STRATEGY WAS REQUIRED FOR VICTORY.

Attorneys often must position their case to the Supreme Court in a manner different than that

which would have been appropriate before the lower courts—particularly in cases presenting

constitutional issues of first impression. Several factors counseled *McDonald* Plaintiffs' winning

Supreme Court strategy. Most important among the Supreme Court's unique attributes is that it is

---

[2]Justice Alito's oblique treatment of various historical references underscores this point.
Justice Alito references speeches by Senator Howard and Rep. Bingham, and a brief submitted by
the Nation's leading constitutional scholars, supporting incorporation under "the Amendment," "§ 1
of the Fourteenth Amendment," and "the Fourteenth Amendment," respectively. *McDonald*, 130 S.
Ct. at 3033 n.9. But all of those sources spoke not of the Amendment or § 1, generally, but
specifically of the Privileges or Immunities Clause. *See* Alan Gura, Ilya Shapiro, & Josh Blackman,
*The Tell-Tale Privileges or Immunities Clause*, 2010 Cato Sup. Ct. Rev. 163, 180-82 (2010).

not bound by its own precedent. *Stare decisis* is a powerful doctrine, to be sure, but it is no match for a Justice's strong belief that a previous decision is erroneous and unworthy of continued support. Additionally, as a matter of simple arithmetic, Supreme Court majorities for a judgment must often be cobbled from various perspectives that may overlap only slightly, or not at all. Finally, word limits impress upon counsel the need to carefully allocate efforts on behalf of various claims. An argument for overruling ancient precedent will demand greater space than one under an established doctrine that is frequently applied, and on which the Justices have strongly-held opinions.

Justice Thomas, joined by then-Chief Justice Rehnquist, had signaled skepticism of the Court's Privileges or Immunities doctrine. "Legal scholars agree on little beyond the conclusion that the Clause does not mean what the Court said it meant in 1873." *Saenz* v. *Roe*, 526 U.S. 489, 523 n.1 (1999) (Thomas, J. dissenting) (citations omitted). "I would be open to reevaluating [the Privileges or Immunities Clause's] meaning in an appropriate case." *Id.* at 528. And in the last major civil rights case reaching the Court from Chicago, Justice Scalia derided substantive due process as an ''atrocity'' and an act of ''judicial usurpation.'' *City of Chicago* v. *Morales*, 527 U.S. 41, 85 (1999) (Scalia, J., dissenting). Vigorous skepticism toward theories of substantive due process are hardly unique to Justice Scalia.

In *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), the majority vindicated an individual Second Amendment right based on an historical analysis of the Second Amendment's original public meaning. Shortly afterward, Justice Scalia penned the following words:

> Twenty years ago, when I joined the Supreme Court, I was the only originalist among its numbers. By and large, counsel did not know I was an originalist – and indeed, probably did not know what an originalist was.  In their briefs and oral arguments on constitutional issues they generally discussed only the most recent Supreme Court cases and policy considerations; not a word about what the text was thought to mean when the people adopted it. If any light was to be shed on the latter question, it would be through research by me and my law clerks.  Today, the secret is out that I am an originalist, and there is even a second

9

one sitting with me, Justice Clarence Thomas. Rarely, nowadays, does counsel fritter away two out of nine votes by failing to address what Justice Thomas and I consider dispositive. Originalism is in the game, even if it does not always prevail.

Justice Antonin Scalia, *Foreward*, 31 HARVARD J. L. & PUB. POL'Y 871 (2008).

Offering an originalist argument in *McDonald* was not optional. An object lesson in failing to comprehensively raise all legitimate constitutional arguments before the Supreme Court is found in *Gonzales* v. *Carhart*, 550 U.S. 124 (2007). In *Carhart*, abortion providers challenged the federal prohibition on so-called "partial birth abortion" under the Fifth Amendment's Due Process Clause. Five Justices rejected application of a due process abortion right to the procedure at issue. Yet Justice Thomas, joined by Justice Scalia, offered an intriguing concurrence, pointing out that whether the act "constitutes a permissible exercise of Congress' power under the Commerce Clause is not before the Court. The parties did not raise or brief that issue; it is outside the question presented; and the lower courts did not address it." *Id.* at 169 (Thomas, J., concurring). Justice Thomas had previously offered that "health laws of every description" were "not surrendered to a general government." *United States* v. *Lopez*, 514 U.S. 549, 594 (1995) (Thomas, J., concurring) (citation omitted). *Carhart*'s four dissenters may well have rejected these limitations on congressional power, yet had the petitioners fully advanced both arguments, it appears they would have prevailed 6-3 instead of losing 5-4. *See* Cohen, supra, 79 Geo. Wash. L. Rev. at 839-41.

In *McDonald*,

[b]y raising that [Privileges or Immunities] argument and getting only Justice Thomas to agree with it, the petitioners' lawyers won even though every other Justice rejected that argument. Without the Privileges or Immunities Clause argument, assuming Justice Thomas would not switch his position on Due Process Clause incorporation just to reach a particular result, only the four Justices in Justice Alito's plurality would have voted in favor of incorporation. However, with Justice Thomas agreeing with that argument (even though he did not agree with the Due Process Clause argument), *the petitioners' lawyers had a fifth vote in favor of incorporation and thus won the case.*

10

Cohen, supra, 79 Geo. Wash. L. Rev. at 839 (emphasis added).

It would be silly to suggest that *McDonald* Plaintiffs' approach took the Supreme Court by surprise. On petition for a writ of certiorari, *McDonald* presented the following question: "Whether the Second Amendment right to keep and bear arms is incorporated as against the States by the Fourteenth Amendment's Privileges or Immunities or Due Process Clauses." Responding to the *McDonald* petition, Defendant Chicago partially objected:

> If the Court believes the time is right to address whether the Second Amendment restrains state and local governments under the Due Process Clause, the petitions should be granted to address this issue only [but t]his Court should decline to address whether the Second Amendment is incorporated under the Privileges or Immunities Clause.

Br. for Respondents in Opp. to Petition for Writ of Certiorari, at 6. *McDonald* replied that there was no way to divorce the historical record of the Fourteenth Amendment's ratification from the case. Arguing that the Supreme Court had erred in its basic approach to the Fourteenth Amendment, the reply brief on petition for a writ of certiorari contained section headings entitled, "The Privileges or Immunities Clause Cannot Be Avoided" and "Overruling *Slaughterhouse* Remains Imperative."

But while, in Justice Scalia's words, "originalism was in the game," *McDonald*'s certiorari petition was first based upon the Seventh Circuit's split from the Ninth Circuit on the subject of selective incorporation, and secondly, upon the Seventh Circuit's refusal to perform the due process incorporation analysis *amici* believed was required by the Court's precedent. Many reasons might have supported the Supreme Court's preference for the *McDonald* petition. Perhaps the Justices understood that a comprehensive originalist argument would be required, regardless of whether they each stood ready to accept that approach. Or perhaps the Justices were primarily interested in considering Due Process Clause incorporation, and chose to grant the petition that coherently laid out the modern selective incorporation doctrine. In any event, the Supreme Court granted the

11

*McDonald* petition, and *only* the *McDonald* petition, for argument on the merits.

Another benefit of advancing the Privileges or Immunities argument was its impact in helping *amici* create broad non-traditional alliances from across the ideological and political spectrum. Supporters of this position ranged from Yale's Jack Balkin, who joined other top constitutional scholars as *amici*, to former Attorney General Edwin Meese, as an *amicus* brief author. Even the *New York Times* editorial page, not usually a voice for gun rights, opined that *McDonald* should prevail on the Privileges or Immunities argument. Securing Second Amendment rights in that manner "would be truer to the intent of the founders, and it could open the door to a more robust constitutional jurisprudence that would be more protective of individual rights." Editorial, *The Second Amendment's Reach*, N.Y. TIMES, March 1, 2010, at A22, available at http://www.nytimes.com/2010/03/02/opinion/02tue1.html (last visited March 22, 2012).

NRA correctly notes that some Justices were hostile to the Privilege or Immunities argument. If facing hostility from the Bench is at times the price of winning—and here it was—so be it. Such hostility was predictable. "Justice Scalia's situation is particularly interesting." Robert Barnes, *Gun case presents quandary for Supreme Court justices*, WASHINGTON POST (March 1, 2010), available at http://www.washingtonpost.com/wp-dyn/content/article/2010/02/28/AR2010022803985.html (last visited March 22, 2012). Of course, the Justices can say what they wish to counsel, and the reverse is not true. Counsel's task is not to please everyone, an impossible order in a case such as *McDonald*. Counsel's task is to get five votes. *McDonald*'s counsel put forth the arguments necessary for five votes: selective incorporation as established under the Due Process Clause, and Privileges or Immunities as endorsed by numerous scholars and Justices throughout history, including the Justice supplying the decisive vote in the case.

NRA's briefing did not add anything not already covered by *McDonald* plaintiffs or *amici*.

12

Certainly, NRA could have filed the same brief were it an *amicus* rather than a Respondent under Supreme Court Rule 12.6. Solicitor General Clement's performance at oral argument was, as usual, of the highest quality. Yet it is impossible to point to that argument as decisive in the case, as though ten minutes with Mr. Clement altered any Justice's firmly held convictions regarding the well-trod Due Process Clause. Much more likely, committed opponents of substantive due process supported the outcome in *McDonald* because *amici*'s originalist arguments assured them that the result would be consistent with the Fourteenth Amendment's original public meaning (see supra, n.2)—even if they were uncomfortable with the consequences of endorsing the originalist doctrinal argument. In any event, NRA's ten minutes came at the cost of compressing *McDonald*'s argument. *McDonald*'s original thirty minutes would have already been barely adequate to cover the ground accepted in the Question Presented before the Supreme Court.

IV.     NRA HARMED THE *McDONALD* CASE.

Unlike *McDonald* Plaintiffs, NRA argued that the right to bear arms is a so-called privilege of national citizenship, among those rights "which owe their existence to the Federal government, its national character, its Constitution, or its laws." *Slaughterhouse*, 83 U.S. (16 Wall.) at 79; NRA Respondent Br., 08-1521, at 38. Foreclosed by *United States* v. *Cruikshank*, 92 U.S. 542 (1875), this view of the Second Amendment under the Privileges or Immunities Clause garnered no votes.

More to the point, for an organization dedicated to the preservation of Second Amendment rights, this was a shocking position to argue before the Supreme Court. Had it been accepted, the claim would have resulted in a pyrrhic victory, substantially diminishing *Heller*'s understanding of the Second Amendment as codifying a pre-existing right that must be understood according to history and tradition. *McDonald* plaintiffs firmly believe that the right to bear arms is a pre-existing right that, like others enumerated in the Bill of Rights, does not depend upon recognition in positive

13

law for its existence. *McDonald* plaintiffs also believe that the Fourteenth Amendment was, in fact, ratified to broadly secure the civil rights that all people inherently enjoy.

While NRA offered an unusual view of the Privileges or Immunities Clause, and one equally barred by precedent with respect to the Second Amendment, NRA argued that it did "not believe it is necessary" for the Court to adopt the Privileges or Immunities argument. NRA Respondent Br., 08-1521, at 38. Of course it is never necessary for the Court to adopt one argument if it wishes to rely upon another. But it was positively foolish for NRA to attack *McDonald*'s arguments, strategy and competence, and undercut the only case before the Supreme Court on the merits with a conflicting view of the Fourteenth Amendment. Cases like this are sufficiently difficult without such "help."

Perhaps were there no *McDonald* case, the NRA's petition for a writ of certiorari would have been granted for argument on the merits—and we would have learned whether NRA's all Due Process and *Slaughterhouse* approach, that may have omitted mention of the modern selective incorporation doctrine, would have carried the day. *Amici* doubt it.

V.     THIS COURT'S FEE AWARD IN *McDONALD* REFLECTS THE FAIR MARKET VALUE OF WINNING THE CASE.

NRA offers that the basis for the *McDonald* award is "speculative," then speculates that it "could have been simply that counsel wanted money quickly." Jt. Statement, 7. *Amici* will dispel the need for speculation. *Amici* do not generally perceive a need to settle cheap with a Section 1988 defendant, especially once liability is established. After all, the prevailing plaintiffs are entitled to fees-on-fees, and to have all rates brought forward to compensate for the time delay in payment, in addition to other interest sometimes allowed per *Perdue* v. *Kenny A.,* 130 S. Ct. 1662, 1674-75 (2010). *NRA*'s citation to the *Heller* fee dispute belies its speculation. A glance at that docket would reveal that *Heller* counsel aggressively fought Washington, D.C. for many years on the subject.

14

Contrary to NRA's assertions, this case was not "extraordinarily complex." NRA Br., at 4. *Heller* was an extraordinarily complex case, and counsel pursued attorney fees under that understanding. *McDonald* was, to be sure, a very important case, and one made needlessly more difficult by NRA's attacks on it. But *McDonald*'s relative lack of legal complexity prompted *amici* to forego any demand to Defendant Chicago for a special complexity based enhancement. When everything was said and done, in *McDonald*, four Justices merely applied the Supreme Court's very well-established selective incorporation doctrine, and one Justice applied the view that has long been overwhelmingly prevalent among constitutional scholars and expressed by various Justices.

As primarily public interest lawyers, Gura & Possessky, PLLC did not have generally established billing rates, and based its rates on the Updated Laffey Matrix. *Covington* v. *District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995); *Salazar* v. *District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000). From there, *amici* made slight concessions in the interest of resolving the matter, and as well, with respect to the hours actually worked. Mr. Sigale submitted his established billing rate. *Amici* wish they could have claimed more hours, but it is to be expected that when lawyers charge north of $500 an hour, they work efficiently. In the end, this Court awarded *amici* approximately 90% of their claim to Defendant. In contrast, NRA counsel's staffing of the case appears plainly excessive, and would have been so even had theirs been the only case on the subject. *Amici* truly wish this case were worth what NRA counsel claim it is worth. But it is not.

Dated: March 26, 2012              Respectfully submitted,

Alan Gura                          /s/ David G. Sigale
Gura & Possessky, PLLC             David G. Sigale (Atty. ID# 6238103)
101 N. Columbus St., Ste 405       Law Firm of David G. Sigale, P.C.
Alexandria, VA 22314               739 Roosevelt Road, Suite 304
703.835/9085/703.997.7665          Glen Ellyn, IL 60137
                                   630.452.4547/Fax 630.596.4445

15