**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., DR. KATHRYN TYLER, | ) | |
| VAN F. WELTON, | ) | |
| and BRETT BENSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  08 CV 3697 |
| | ) | |
| | ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Plaintiffs, by counsel, hereby reply to Defendants' Response to Plaintiffs' Motion for Attorneys' Fees (hereafter "Response").

**1.      This Case Posed Complex Issues of Great National Significance**

Defendants begin by suggesting that this case posed a simple issue not requiring much effort, in that the "Supreme Court stated that the answer to the due process argument Plaintiffs claim warranted their special involvement was already 'unmistakably' provided by *District of Columbia v. Heller*, 554 U.S. 570 (2008)."  Response 1-2, quoting *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3036 (2010).  But *McDonald* did not say that the issue in the case was simple.  Instead, it stated that "[o]ur decision in *Heller* points unmistakably" to the answer to "the question whether the Second Amendment right to keep and bear arms is incorporated in the concept of due process" by holding "that individual self-defense is 'the *central component*' of the Second Amendment right."  *Id*.  That was just the beginning of a complex analysis of the

original understanding of the Fourteenth Amendment and of the Court's incorporation jurisprudence.[1]

The Seventh Circuit wrote that "the proper outcome of this case is not . . . straightforward," adding: "Thus far neither the third nor the seventh amendment has been applied to the states – nor has the grand jury clause of the fifth amendment or the excessive bail clause of the eighth. How the second amendment will fare under the Court's selective (and subjective) approach to incorporation is hard to predict." *National Rifle Association of America, Inc. v. City of Chicago*, 567 F.3d 856, 858-59 (7th Cir. 2009). While *Heller* held that the Second Amendment recognizes individual rights, "those rights may take a different shape when asserted against a state than against the national government." *Id*. at 859.

Nor did the issue appear simple in the briefs of the parties or the fifty amici briefs filed in the Supreme Court. Part I of defendants' brief was devoted to the proposition that "The Due Process Clause Does Not Incorporate the Second Amendment Right to Keep and Bear Arms." Brief for Respondents City of Chicago & Village of Oak Park, *McDonald v. Chicago*, 2009 WL 5190478, *8-42 (Dec. 30, 2009). They presented vigorous arguments that the right at issue is not "implicit in the concept of ordered liberty," that "Framing-era history . . . does not support incorporation," and that the Court's jurisprudence did not support incorporation. *Id*. at *4-5. Surely defendants' do not contend that the Supreme Court's lengthy 5-4 decision was predictably so "unmistakably" clear that they litigated this case needlessly with arguments not made in good faith.

---

[1]     "In my view, taking *Heller* as a given, the Fourteenth Amendment does not incorporate the Second Amendment right to keep and bear arms for purposes of private self-defense." *Id*. at 3122-23 (Breyer, J., dissenting, joined by Justices Ginsburg and Sotomayor).

2.      **Plaintiffs' Hours Were Reasonable, and Fee Recovery Should
        Not Be Limited to the Amount of the *McDonald* Fee Settlement**

Defendants would slash plaintiffs' fee recovery to $580,783.54, and alternatively argue that plaintiffs should be awarded no more than the amount of the *McDonald* settlement, $399,950.  Response 20-22.  Mistakenly labeling this amount a "fee award" rather than a "settlement" – which could have been reached for any number of reasons – they assert that "the *McDonald* fee award demonstrates that the instant cases, which raised the very same dispositive issue and proceeded along the identical track as *McDonald*, could have been successfully litigated for $399,950."  *Id.* at 21.

This disregards that the NRA plaintiffs set forth the most advanced arguments that were critical to a majority on the Court agreeing that the Second Amendment right is incorporated into the Fourteenth Amendment.  A plurality of four Justices agreed that incorporation was though the Due Process Clause, and while Justice Thomas would have done so through the Privileges-or-Immunities Clause, he agreed that the right is fundamental.  It is only speculative to imply, as do defendants, that the same result would have been reached based solely on the briefing of *McDonald* counsel (Response 22), whose focus was to overrule the *Slaughterhouse Cases*.  The reasonableness of plaintiffs' fees in this case must be based on the evidence they presented, not on defendants' settlement with other parties.

Defendants suggest that expenditure of 1,072 hours by counsel for NRA plaintiffs in the Supreme Court was unreasonable because *McDonald* counsel expended a little under half that, 405.9.  Response 11.  NRA plaintiffs have fully documented the work they conducted and the qualifications of their counsel in this momentous case.  Defendants have suggested nothing regarding the substance of the work product by *McDonald* counsel or their qualifications (other

3

than Mr. Gura having argued *Heller*) that would render the number of hours they expended the standard for what was reasonable in this case.

Defendants themselves may have expended a number of hours closer to that of the NRA than *McDonald*. Their brief in the Supreme Court was written by two assistant corporation counsels with research assistance from two volunteer attorneys in the City's Law Department and attorneys at Mayer Brown, which represented Oak Park. Response 10. The Chicago attorneys who worked on the case did not keep time records.[2] However, at least two Chicago attorneys "worked full-time on the case" after the NRA and *McDonald* briefs were filed on Nov. 16, 2009. Declaration of Benna Ruth Solomon, ¶ 12, *Id.* Since defendants' brief was filed on Dec. 30, 2009, those two attorneys would have worked six weeks in that time period, which (assuming 40 hour weeks) would have amounted to a total of 580 hours. The hours they worked before or after that period, and the hours any supervisory attorneys and the two volunteer attorneys worked, are not known.

In addition, outside counsel James Feldman, who argued the case for defendants, expended 289.2 hours. Response 10. Counsel for Oak Park recorded 733.5 hours on the entire case (their worksheet does not summarize hours devoted to the Supreme Court phase). Affidavit of Ranjit Hakim, Ex. 5, in Jt. Sub. Def. It thus appears that hours expended by defendants' counsel in the Supreme Court are closer to the hours expended by NRA plaintiffs than the *McDonald* plaintiffs.

Similarly, no basis exists for reducing Halbrook's 609.9 hours in pre-litigation preparations and in litigating the matter before this Court and the Seventh Circuit to the 174.3

---

[2] Declaration of Benna Ruth Solomon, ¶ 16, in Joint Submission by Defendants City of Chicago & Village of Oak Park Pursuant to Local Rule 54.3(d)(5) (hereafter "Jt. Sub. Def."), Exhibit A to Defendants' Response to Plaintiffs' Motion for Attorney's Fees.

hours claimed by Mr. Gura. Response 9. Nor does any basis exist for deleting hours on such matters as plaintiffs' motion to strike defendants' jury demands, or motion for hearing *en banc* in the Seventh Circuit. *Id.* "A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable." *People Who Care v. Rockford Board of Education, School District No. 205,* 90 F.3d 1307, 1314 (7th Cir. 1996).

Further bearing out the "settlement" characteristic of the *McDonald* fee amount, the billing records for *McDonald* counsel do not reflect any time billed after June 2, 2011, just after the Court of Appeals' decision on liability for fees.[3] Yet work preparing fee records and the fee petition are clearly compensable, and plaintiffs here are entitled to recover for it. That includes recovery for the fees of King & Spalding and Bancroft ($20,578 and $19,865 respectively). Defendants claim that no need existed for the services of Paul Clement on that issue. Response 14. Yet given the uncertainty in the law, as evidenced by this Court's decision denying liability for fees, those services were eminently reasonable.

Defendants present what they call a summary of Halbrook's lodestar calculation which arbitrarily reduces his hours. Response 12. Yet "[t]he record ought to assure us that the district court did not 'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive to the court.'" *People Who Care*, 90 F.3d at 1314 .

Finally, by way of comparison, in *Heller* Mr. Gura sought a fee recovery for 3,270 hours and an award of $3,126,397. *Heller v. District of Columbia*, No. 03–213, 2011 WL 6826278,

---

[3]  Ex. 2, Joint Submission by Defendants City of Chicago & Village of Oak Park Pursuant to Local Rule 54.3(d)(5) (hereafter "Jt. Sub. Def."), Exhibit A to Defendants' Response to Plaintiffs' Motion for Attorney's Fees.

*1, *11 (D. D.C. Dec. 29, 2011).  Here, NRA seeks $2,195,324, roughly $1 million less.  Mr. Gura settled *Heller* for $1,500,000.[4]

### 3.  Fees Should be Awarded for Halbrook's Work in the Supreme Court

Defendants argue that *no* fees should be awarded to Halbrook for his 589.70 hours expended in the Supreme Court phase of this case because "Plaintiffs . . . retained additional counsel, Goodwin Proctor and King & Spalding, to author Plaintiffs' brief" in the Court. Response 10-11.  That disregards the facts.  First, Halbrook prepared the petition for a writ of certiorari.  Second, only Halbrook and Goodwin Proctor represented plaintiffs through the filing of the opening brief, which was drafted by both firms.  Third, King & Spalding came into the case after that brief was filed, in order for Paul Clement to file a motion to conduct oral argument for plaintiffs.  Fourth, plaintiffs' reply brief was drafted primarily by Halbrook and Goodwin Proctor, with helpful comments being made by King & Spalding.  See Memo. in Support of Motion for Attorney's Fees (hereafter "Memo. in Support") 3-4.

Each of the three firms played an essential and unique role in the Supreme Court phase, and defendants do not question that role in regard to Goodwin Proctor and King & Spalding. Halbrook was the only counsel among the attorneys for the NRA plaintiffs, for the defendants, or from the fifty amici to have published widely on Second Amendment incorporation, to have litigated incorporation, and to have argued and won firearm law cases in the Supreme Court.[5]

---

[4]  http://legaltimes.typepad.com/blt/2012/04/dc-gun-case-lawyers-reach-settlement-with-city-over-attorney-fees.html?cid=6a00d83451d94869e20168e9a54fa2970c.

[5]  By coincidence, in Halbrook's first such case, *United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992), counsel for the United States was James Feldman, who argued for defendants here in the Supreme Court.

Memo. in Support 7.  Moreover, for continuity alone it was reasonable for Halbrook to remain in the case.[6]  No basis exists to deny a fee award for Halbrook's services in the Supreme Court.[7]

### 4.  Counsel's Claimed Hourly Rates are Reasonable

Paul Clement's normal market rate is $1020 per hour, and Steve Poss' normal rate is $880.  Defendants do not dispute these facts, but argue that these rates should be reduced to $765.  Response 13-14.  The only basis of the $765 figure is that this amount was claimed by one attorney in one unrelated Supreme Court case.  *Id*.  Plaintiffs have documented the qualifications of Clement and Poss, but defendants have submitted nothing regarding the qualifications of the attorney in that other case or presented any other evidence on the reasonableness of the fees claimed here.[8]

Like Clement and Poss, Halbrook brought different but unique qualifications as an attorney in this case.  His claimed fee of $800 per hour is based on the comparative rates not only of Clement and Poss, but also of counsel for the District in *Heller* of $760 to $950 per hour for those  "20 + years" out of law school, and of some of the same counsel who filed amici curiae briefs in this case.  Halbrook Declaration 9, Exhibit 3 to Plaintiffs' Motion for Attorney's Fees.

---

[6]  *See* Declaration of Benna Ruth Solomon, ¶ 7 (district court counsel continued to assist on appeal "to ensure that he would be up to speed if the case went to the Supreme Court"), ¶ 12 (counsel in the Seventh Circuit continued to work on the case in the Supreme Court), in Joint Submission by Defendants City of Chicago & Village of Oak Park Pursuant to Local Rule 54.3(d)(5) (hereafter "Jt. Sub. Def."), Exhibit A to Response.

[7]  Defendants also object to any recovery for Cooper & Kirk in part because they entered no appearance in this case.  Response 19.  Defendants fail to address that firm's reasonable services, which included critiquing drafts of briefs and serving in moot courts.  Memo. in Support 8.

[8]  Plaintiffs claim a fee of $179,014.60 for King & Spalding/Bancroft.  Joint Statement Pursuant to Local Rule 54.3(e), 2-3, Exhibit A to Plaintiffs' Motion for Attorney's Fees.  Defendants say that there is an error in calculation, and the true figure is $178,324.60.  Response 13.  We recalculated the figures and do not find any error.  (The total for Adam Conrad should be $17,552 rather than $17,802, but that does not affect the grand total.)

Counsel for Oak Park noted normal hourly rates of as much as $745 for firm members who worked on this case.[9]

Defendants reject any such comparison in part because "Clement and Poss work for large law firms and therefore command a different billable rate from that of a solo practitioner." Response 6. That is contrary to *Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 117 (7th Cir. 1996), which held that "if the attorneys who work for the Central States Pension Fund are making it a gift by working for wages lower than those they could secure at large law firms, the value of that gift belongs to the Fund, which can capture it by an award of fees at market rates." Thus, "the court should make an award representing the cost the victorious litigant would have incurred to buy legal services in the market, no matter how the litigant actually acquired those services." *Id.*[10]

Defendants suggest that the hourly rate of $539 which they agreed to pay in their settlement with Alan Gura should be Halbrook's maximum rate. Response 7. No information is provided concerning Mr. Gura's experience other than his litigation in this case and in *Heller*.[11] His hourly rate in the settlement is irrelevant here.

---

[9]    Affidavit of Ranjit Hakim, Ex. 5, in Joint Submission by Defendants City of Chicago & Village of Oak Park Pursuant to Local Rule 54.3(d)(5) (hereafter "Jt. Sub. Def."), Exhibit A to Response.

[10]    *O'Sullivan v. City of Chicago*, 484 F. Supp.2d 829, 837-38 (N.D. Ill. 2007), relying on the annual *National Law Journal* sampling of hourly rates charged by Chicago and other law firms, explained, *id.* at 839:

> Of course, the fact that large law firms generally charge rates higher than those of small firms (or sole practitioners) does not mean that a particular rate is unreasonable when charged by lawyers from small firms or that a lower rate is automatically reasonable. The quality of one's work is not a function of the size of the law firm with which the petitioning lawyer is associated.

[11]    Regarding expenses, defendants object to Halbrook's paralegal fee of $922.15 as insufficiently particularized. Response 12. Plaintiffs hereby agree to waive that fee.

**5.  Services and Rates of Local Counsel Were Reasonable**

Regarding rates, defendants concede that Freeborn submitted competent evidence of its attorneys' billing rates, and that William N. Howard of Freeborn, who has 27 years of experience in complex litigation, and almost 15 years of experience in gun-related litigation, reduced his customary rate of $525 per hour to $475 per hour for this case.  No basis therefore exists for reducing Howard's or Freeborn's hourly rate.

Despite this, defendants argue that Freeborn should only be paid only $300 per hour because that is the payment that local counsel in *McDonald*, David Sigale, received.  What Sigale charged, standing alone, is not evidence that $300 per hour is the appropriate market rate. Moreover, Mr. Sigale received this amount as part of a settlement, which makes his payment inapplicable here as a benchmark.  *See Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 62 (D.C. Cir. 2011) (the hourly rate that the defendant paid in other cases as part of settlement "is not determined by market forces, such as demand for the attorney's services or the supply of similarly qualified attorneys in the [locale], and therefore does not serve as proof of the 'market rates' charged to clients by comparable attorneys performing comparable work").

Defendants also argue that Freeborn and Peters should be paid only $300 per hour because that is the rate that Kolodziej charged Plaintiff in the Chicago Case.  But Kolodziej charged less than the market rate of $475 based on a motivation to assist the NRA, and "the value of that gift belongs to" the Plaintiffs, not the Defendants.  *See Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 117 (7th Cir. 1996).

Furthermore, the hours spent by Freeborn and Brenner were reasonable, both pre- and post-consolidation.  As the billings statements establish, there was a clear delineation in the work performed by Freeborn and Brenner, who were local counsel in different cases that involved

different ordinances, and that both firms were careful to avoid duplicative work. In fact, Freeborn's detailed billing statements show that only nominal time – i.e., less than five percent by Freeborn's calculation – was devoted to conferences with attorneys from the other firms. Given the complexity of this case and the need for coordination between the parties, the minimal time spent on conferences, which permitted the firms to coordinate to efficiently divide the necessary tasks and avoid duplicative work, was eminently reasonable and necessary.

Brenner's and Freeborn's time records submitted in support of plaintiffs' motion set forth all of the work performed and the time spent in the two appeals in this case, yet defendants fail to articulate why two local counsel were unnecessary, or to identify any specific charges by either Brenner or Freeborn for work performed to which they object. Instead, defendants simply offer an arbitrarily reduced number of hours for each firm's work, without any explanation as to how that figure was determined or why defendants contend that the reduced figure is more reasonable than the time actually spent. Defendants unexplained, unsubstantiated, and arbitrarily reduced number does not constitute evidence that Brenner and Freeborn's work performed was unnecessary, or that the charges for that work are unreasonable.

## CONCLUSION

The Court should grant plaintiffs' request for reasonable attorney's fees.

Respectfully submitted,


NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., Dr. KATHRYN TYLER,
VAN F. WELTON and BRETT BENSON
Plaintiffs

BY:   s/ Stephen A. Kolodziej
            One of Their Attorneys

Stephen P. Halbrook                     Stephen A. Kolodziej
Attorney at Law                         Ford & Britton, P.C.
3925 Chain Bridge Road, Suite 403       33 North Dearborn Street, Suite 300
Fairfax, VA 22030                       Chicago, Illinois 60602
Tel. (703) 352-7276                     Tel (312) 924-7500
Fax (703) 359-0938                      Fax (312) 924-7516

## CERTIFICATE OF SERVICE

I, Stephen A. Kolodziej, an attorney, certify that on this, the 30th day of April, 2012, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago - Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois  60602
Tel:    (312)   744-4342
Fax:    (312)   742-3925

and that I caused a copy to be served by U.S. Mail on:

Ranjit Hakim
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

s/ Stephen A. Kolodziej
Stephen A. Kolodziej
Counsel for Plaintiffs