**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., DR. KATHRYN TYLER, VAN F. WELTON, and BRETT BENSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 08 CV 3697 |
| | ) ) | Judge Milton I. Shadur |
| THE CITY OF CHICAGO, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO AMICI CURIAE BRIEF OF**
**GURA & POSSESKY *ET AL*. IN SUPPORT OF DEFENDANT**

Plaintiffs, by counsel, hereby reply to Brief of Gura & Possessky, *et al*., as Amici Curiae in Support of Defendant (hereafter "Amici Br.").

The Supreme Court called the privileges-or-immunities argument *McDonald's* "primary submission," and due process was "a secondary argument." *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3028 (2010). It was the reverse for the NRA. The plurality of four Justices agreed with NRA's due process argument, and Justice Thomas' concurrence that the right is fundamental (which NRA also argued) resulted in a majority in favor of incorporation. Any suggestion that the NRA somehow made the wrong arguments and did not win is precluded by both the substance of the Supreme Court's decision and the Seventh Circuit's finding that NRA is a "prevailing party" for purposes of attorney's fees.

Amici state that the NRA attacked amici's competence and speculated as to their financial health. Amici Br. 1. NRA did neither. NRA did nothing more than to point out what

1

is obvious from the Supreme Court decision and to observe the truism that the settlement of amici's attorney's fee claim was just that – a settlement.

While eight Justices rejected the privileges-or-immunities clause argument, amici suggest that NRA made an incorrect argument regarding the due process clause, and that "had NRA's approach prevailed, the case would have assuredly been lost." Amici Br. 2. Amici claim that the plurality's due process holding is fully set forth in the *McDonald* briefs. *Id*. at 4.

NRA consistently made the correct selective incorporation arguments based on Supreme Court precedent and the original understanding of the Fourteenth Amendment. Amici claim that NRA did not understand correct selective incorporation until its reply brief in the 7th Circuit, but before that, it made an incorrect "implicit incorporation" argument, set forth a novel position regarding "substantive" and "non-substantive" rights, and claimed that the due process clause "incorporates wholesale all textually-enumerated rights." Amici Br. 4.

To the contrary, in every brief in this case, NRA argued selective incorporation of substantive Bill of Rights guarantees like the rights to free speech and to keep and bear arms, and noted the Court's rejection of incorporation of certain procedural rights, including indictment by grand jury (Fifth Amendment) and jury trial in civil cases (Seventh Amendment). According to amici, NRA incorrectly said a right is "fundamental" if "explicitly or implicitly protected by the Constitution," quoting NRA Brief, Dec. 4 [*sic* - 1], 2008, at 12 (citation omitted). Yet the citation that amici omitted is *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17, 33 (1973). NRA fully qualified those words of the Supreme Court by reference to the Court's selective incorporation cases.

2

According to amici, NRA incorrectly said that "since the Second Amendment encompasses an explicitly-guaranteed, substantive right, it meets the standards of the Supreme Court's jurisprudence on incorporation of fundamental rights into the Fourteenth Amendment." NRA Br., *supra*, at 15. NRA cited incorporation precedents of the Court in support of this statement. Amici suggest that no authority exists for the distinction NRA drew between substantive rights such as in the First Amendment and procedural rights such as the Grand Jury and Civil Jury Clauses. Amici Br. 4. In making that distinction, NRA relied on such cases as *Hurtado v. California*, 110 U.S. 516, 532 (1884), which said that due process does not guarantee "particular forms of procedure" such as indictment by grand jury.

Amici suggest that the NRA figured out in its 7th Circuit reply brief, "perhaps after reading briefs filed by *McDonald* Plaintiffs," that a right is fundamental from historical acceptance, recognition by states, and the nature of the interest secured by the right. Amici Br. 4, citing *Duncan v. Louisiana*, 391 U.S. 145 (1968). NRA's briefs are filled with such arguments, and NRA quoted from *Duncan* in its district court brief (p. 14) and its opening 7th Cir. Brief (p. 39). NRA argued in every brief that the First and Second Amendment are incorporated, but certain procedural rights (*e.g.*, grand jury in the Fifth Amendment) are not, which is the very meaning of selective incorporation. Despite that, amici claim that NRA made no "selective incorporation" argument in its district court brief or opening 7th Circuit brief. Amici Br. 6.

Amici suggests that NRA's petition for a writ of certiorari was not initially granted because it misunderstood selective incorporation. Amici Br. 6. But the Supreme Court granted NRA's petition after granting the *McDonald* petition, and in any event NRA was a respondent in

support of petitioner in *McDonald* and participated in oral argument. Clearly, the Supreme Court thought that NRA's participation contributed to the resolution of the case.

Amici suggest that NRA's merits briefs in the Supreme Court were deficient for not citing *Nordyke v. King*, 563 F.3d 439 (9 Cir.), *reh'g en banc granted*, 575 F.3d 890 (2009). Amici Br. 7. NRA cited the panel decision in its cert. petition but not in the merits briefs because the granting of the rehearing en banc vacated the opinion, which under circuit rules may not then be cited as precedent. 575 F.3d at 890. Amici faults NRA for not discussing four cases in its reply brief (*Duncan, Benton, Palko,* and *Washington v. Glucksberg*), even though NRA discussed them in its opening brief. Issues were not raised on those cases warranting reply.

Of its 55 pages on the privileges-or-immunities clause and 7 pages on the due process clause, amici state: "Perhaps one argument was simpler?" Amici Br. 7. Amici further asserts that no due process theory in the Alito opinion was missing from the *McDonald* briefs, and that *McDonald*'s originalist arguments were more comprehensive than NRA's. Yet *McDonald* only skimmed the surface in its 7 pages on the due process clause. The Alito opinion devoted just over 10 pages to privileges-or-immunities (slip op. 5-11), and 34 pages to due process (slip op. 11-45). Moreover, NRA's originalist arguments were unequaled and were based on original sources rather than on law review articles.

Most of the rest of amici's brief argues that the Supreme Court got it wrong by rejecting reliance on the privileges-or-immunities clause, which was supposedly the focus in debate on the Fourteenth Amendment. "While the Court, and all parties, including NRA, cited this history to support the Due Process theory, *McDonald* plaintiffs were being precise in noting exactly what it was that the Framers were discussing." Amici Br. 8. Amici refers to "Justice Alito's oblique

4

treatment of . . . speeches by Senator Howard . . . ." *Id*. n.2, citing *McDonald*, 130 S.Ct. at 3033 n.9. Yet in introducing the Fourteenth Amendment, Senator Jacob Howard stated: "To these privileges and immunities . . . should be added the personal rights guarantied and secured by the first eight amendments of the Constitution; such as . . . the right to keep and to bear arms . . . ." 78 Cong. Globe, 39th Cong., 1st Sess. 2765 (1866). That suggests a contrast between privileges or immunities of citizens and "personal rights" guaranteed to "the people."

To further explain why the Alito opinion got it wrong, amici refers to Alan Gura, Ilya Shapiro, & Josh Blackman, "The Tell-Tale Privileges or Immunities Clause," *2010 Cato Supreme Court Review* 163 (2010). That article asserts that "*McDonald* should have relied on the Privileges or Immunities Clause," *id*. at 169-70, that "[t]he city's lawyers had reason to believe they might prevail on the substantive due process question," *id*. at 172-73, and that "the plurality obfuscated the text it claimed to be interpreting." *Id*. at 182. *See also id*. ("Justice Scalia's Quixotic Concurrence").

Amici seem to suggest that Justice Scalia knew better, as he elsewhere derided substantive due process as an ''atrocity'' and an act of ''judicial usurpation." Amici Br. 9, citing *City of Chicago v. Morales*, 527 U.S. 41, 85 (1999) (Scalia, J., dissenting). But Justice Scalia was referring to "judicially favored rights," not those "set forth in the Bill of Rights." *Id*. at 85.

Amici claim that "[b]y raising that [Privileges or Immunities] argument and getting only Justice Thomas to agree with it, the petitioners' lawyers won even though every other Justice rejected that argument." Amici Br. 10. Further, "some Justices were hostile to the Privilege or Immunities argument. If facing hostility from the Bench is at times the price of winning – and here it was – so be it." *Id*. at 12. The logic of these statements is difficult to understand.

5

It is claimed that the plurality opinion was based on *McDonald*'s originalist arguments, "even if they were uncomfortable with the consequences of endorsing the originalist doctrinal argument." *Id*. at 13. Amici suggest that NRA's oral argument by Paul Clement was of no consequence, and that "NRA's ten minutes came at the cost of compressing *McDonald*'s argument." *Id*. at 13. It is difficult to believe that McDonald counsel would have persuaded the Court of his privileges-or-immunities argument had he had ten more minutes of argument. The NRA had stated in its motion to share in oral argument:

> While Respondents-Supporting-Petitioners have consistently urged the Due Process Clause as the most direct way to apply the Second Amendment to States and localities, Petitioners in their opening brief have concentrated their argument on a Privileges or Immunites Clause theory that would require overruling at least three of this Court's precedents. Indeed, Petitioners dedicate only 7 pages of their 73-page brief to the Due Process Clause, using the balance of the brief to develop an argument based on the Privileges or Immunities Clause.

Motion of Respondents-Supporting-Petitioners for Divided Argument at 2.

NRA further stated that "[t]he case for divided argument is particularly strong where there is a concern that all aspects of the question presented will not be fully presented," that "[t]his is an extraordinarily important case," and concluded: "Because participation of Respondents-Supporting-Petitioners in the oral argument will ensure that the Due Process Clause alternative is adequately presented, the proposed division of argument will materially assist the Court in its consideration of the case." *Id*. at 3.

*McDonald* counsel opposed the NRA's motion, but the Court apparently agreed with the NRA, as it ordered: "Motion of respondents National Rifle Association, Inc., et al. for divided argument granted." *McDonald v. City of Chicago*, 130 S.Ct. 1317 (2010) (mem.).

Amici next argue that "NRA Harmed the *McDonald* Case," Amici Br. 13, but fail to

6

articulate how it did so. Amici state that "it was positively foolish for NRA to attack *McDonald*'s arguments, strategy and competence, and undercut the only case before the Supreme Court on the merits with a conflicting view of the Fourteenth Amendment." *Id*. at 14. NRA did no such thing. NRA's *only* reference in its Supreme Court merits briefs to *McDonald*'s arguments was to refer the Court to "the reasons given at greater length in the brief of Petitioners" regarding the privileges-or-immunities clause. NRA Opening Brief at 46, 2009 WL 3844394, *46.

Amici conclude that *McDonald* was not a complex case, but was "made needlessly more difficult by NRA's attacks on it." Amici Br. 14. Amici are silent on what "attacks" are being referenced – again, NRA's only mention in its briefs to the *McDonald* case was to refer the Court to a *McDonald* brief. And to say that the case was not complex ignores the history of the Fourteenth Amendment's adoption, the Court's nineteenth and twentieth century jurisprudence on incorporation, the briefs of the parties and the fifty amici briefs in this case, and the plurality, concurring, and dissenting opinions in this case.

Finally, amici assert without explanation that the McDonald-Chicago settlement on fees represented the fair market value of winning the case and that NRA's staffing was excessive. Amici Br. 14-15. The basis of a settlement is speculative. *See Rude v. Westcott*, 130 U.S. 152, 164 (1889) ("a payment of any sum in settlement of a claim . . . cannot be taken as a standard to measure the value" of the claim).

Amici state that their hourly rate was based on an Updated Laffey Matrix. Amici Br. 15. Mr. Gura settled for $539 per hour. Defendants' Response to Plaintiffs' Motion for Attorney's Fees at 7. Mr. Gura was admitted to practice law in 1995 and is in the Laffy Matrix category of

7

having 11-19 years of legal experience.  Memorandum of Points & Authorities in Support of Plaintiff's Motion for Attorney Fees, *Heller v. District of Columbia*, Case 1:03-cv-00213-EGS, Document 63-1 (D. D.C. 6/18/10), p. 7, 17, 24.  In *Heller*, Mr. Gura claimed $790 per hour.  *Id.* at 8.  The *Heller* plaintiffs sought fee recovery for 3,270 hours and an award of  $3,126,397.[1] They settled for $1,500,000.[2]

Here, NRA seeks $2,195,324, roughly $1 million less than the *Heller* plaintiffs sought. NRA's staffing was no more than was that of the District of Columbia in *Heller* or that in other complex Supreme Court cases.  NRA's lead attorneys are more experienced than *McDonald* counsel – Halbrook was admitted to the bar in 1978, Poss in 1981, and Clement in 1992.  Amici have added nothing to the arguments and evidence already set forth by the parties in this case.

## CONCLUSION

Reasonable attorney's fees should be awarded pursuant to the evidence set forth in plaintiffs' submissions.

<div style="margin-left: 40%;">

Respectfully submitted,

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,  Dr. KATHRYN TYLER, VAN F. WELTON and BRETT BENSON** Plaintiffs

BY:     s/ Stephen A. Kolodziej
              One of Their Attorneys

</div>

---

[1]  *Heller v. District of Columbia*, No. 03–213, 2011 WL 6826278, *1, *11 (D. D.C. Dec. 29, 2011).

[2]  http://legaltimes.typepad.com/blt/2012/04/dc-gun-case-lawyers-reach-settlement-with-city-over-attorney-fees.html?cid=6a00d83451d94869e20168e9a54fa2970c.

Stephen P. Halbrook                        Stephen A. Kolodziej
Attorney at Law                            Ford & Britton, P.C.
3925 Chain Bridge Road, Suite 403          33 North Dearborn Street, Suite 300
Fairfax, VA 22030                          Chicago, Illinois 60602
Tel. (703) 352-7276                        Tel (312) 924-7500
Fax (703) 359-0938                         Fax (312) 924-7516

## CERTIFICATE OF SERVICE

I, Stephen A. Kolodziej, an attorney, certify that on this, the 30th day of April, 2012, I caused a copy of the foregoing to be served by electronic filing on:

Michael A. Forti
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago - Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois  60602
Tel:    (312)  744-4342
Fax:    (312)  742-3925

and that I caused a copy to be served by U.S. Mail on:

Ranjit Hakim
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

s/ Stephen A. Kolodziej
Stephen A. Kolodziej
Counsel for Plaintiffs